MOORE ET AL. *vs.* ARMSTRONG ET AL.

1. A defendant, whose demurrer has been overruled, and to whom time has been given to answer, may demur again, without leave being specially granted, plaintiffs having, in the mean time, amended their bill, by conjoining another person as complainant.

2. It is available on demurrer, that a party has been joined as plaintiff, who has no interest in the matters stated in the bill.

3. An administrator and his sureties may be joined, or if the administrator dies, leaving no property, or having no personal representative within the State, his sureties may be sued alone, *in equity*, before a liability has been fixed upon their principal, by suit; and where it becomes necessary to proceed in equity, for the recovery of a debt, legacy, or distributive share, all the obligors in the administration bond, should be made parties.

Error to the Court of Chancery at Mobile.

Bill of complaint heard before *Crenshaw*, Chancellor of the Southern Division.

The original bill in this case, was filed by Adam Taylor, sole heir at law, and distributee of James Taylor, his deceased brother, and certain persons, his creditors, to whom he had assigned his claim on the estate of his brother, against Wood, the administrator. To this bill, there was a demurrer filed. Wood was a citizen of Louisiana, and an order for publication was made, before the expiration of which, Wood died. An amended bill was then filed, in which the complainants in the original bill, united with them Samuel Ewing, administrator *de bonis non*, of the estate of James Taylor, and made

9 P                    88

Andrew Armstrong one of the sureties to the administration bond of the deceased administrator, and Leavens and Sheffield, executors of Joshua B. Leavens, the other surety defendants.   The bill alleged that Wood, the administrator, died insolvent, and had no personal representative.

To this amended bill, defendants also demurred specially:

1. That there was a misjoinder of parties;

2. There was no ground of equity;

3. Proper parties were not made;

4. That the bill was multifarious.

The chancellor dismissed the bill, on the ground that the sureties in an administration bond are not liable, (except in extreme cases, of which the present was not one,) until a decree has been made against the administrator in the Orphan's court, or a liability fixed upon him by suit.

The errors assigned were—

1. The motion to dismiss was improperly entertained, as defendants were in contempt;

2. The court had jurisdiction, notwithstanding there had been no proceedings against the administrator.

*James Martin*, for plaintiffs in error.

*J. A. Campbell*, contra.

COLLIER, C. J.—In this case, the following questions arise:

1. Can a party, whose demurrer has been overruled, and to whom time has been given to answer, be allowed

Moore et al. *vs*. Armstrong et al.

to demur again, the complainants, in the meantime, having amended their bill, by conjoining another person as a plaintiff?

2. Is it available on demurrer, that a party has been joined as plaintiff, who has no interest in litigating the matters stated in the bill?

3. Can an administrator and his sureties be joined, or if the administrator be dead, can the sureties be sued alone in equity, before a liability has been fixed upon their principal by suit?

1. It has been said, that if a defendant is in contempt to an attachment for want of an answer, he cannot demur and answer—(1 Smith's Ch. Prac. 208; Curzon vs. De la Zouch, 1 Swanst. Rep. 185; Taylor vs. Milner, 10 Vesey, jr. R. 444.) But such was not the situation of the defendants, in the present case. The record recites, that their demurrer being overruled, sixty days were given them to answer the complainants' bill. No steps had been taken to coerce an answer, or to charge the defendants for a contempt. The defendants were, then, not inhibited from making any defence which the law tolerated in such a case.

After a demurrer has been overruled, a second demurrer will not ordinarily be allowed; for it would be, in effect, to re-hear the case on the first demurrer; as on the argument of a demurrer, any cause, though not shown in the demurrer as filed, may be alleged at the bar; and if good, it will support it. But after a plea overruled, it is said that a demurrer has been allowed, bringing before the court the same question, in subtance, as was raised upon the plea—(Story's Eq. Plead. 362.)

And there have been instances, where the court, on the argument of a demurrer, granted leave to the defendant, on overruling it, to put in another less extended—(Thorpe vs. Macauley, 5 Mad. Rep. 218; Baker vs. Mellish, 11 Vesey, jr. R. 68.) But a defendant will only once be permitted to delay his answer by plea or demurrer, without leave of the court—(Rowley vs. Eccles, 1 Sim. & Ster. R. 511.)

It will be observed, that in the very order of court which gives day to answer, leave is given the complainants to amend their bill, by conjoining as a plaintiff, Samuel Ewing, the administrator *de bonis non*, of James Taylor, deceased. This amendment, we discover from the record, was made by the insertion of the party's name in the bill, and by it, of consequence, every defence was permissible, which the introduction of such a party made necessary or proper. It is no answer, to say, that there had been one demurrer overruled, and that the second was filed without leave of the court. The first demurrer could not reach to the joinder of Samuel Ewing, or have barred (if sustained) a proceeding by him, against the defendants. It was, then, clearly regular for the defendants to point out, by their demurrer, any legal exception to the bill, *more especially*, if it consisted in adding a new plaintiff—(Bosanguet vs. Marsham, 4 Sim. R. 573, is directly in point; see also Robertson vs. Ld. Londonderry, 5 Sim. R. 226.)

2. It is essential to a bill in equity, that it show the plaintiff has an interest in the matters he proposes to litigate—(1 Smith's Ch. Prac. 203; Mitford's Plead. 187; Story's Eq. Plead. 392, 393.) And the want of interest

Moore et al. *vs.* Armstrong et al.

is good cause of demurrer, and goes in bar of the suit— (1 Smith's Ch. Prac. 213;. Mitf. Plead. 14.)    It is not only necessary, that where there is a *sole plaintiff*, he should discover his right, but if there are several plaintiffs, they must show their interest,. and if any one of them is improperly joined, it is ,fatal to the proceeding, and all the defendants may take advantage of it—(Story's Eq. Pl. 417; ibid. 230; ibid. 199.)    But if the objection be a want of interest in the defendant, though well taken, it is not fatal to the whole suit, but only as against the defendant, improperly joined—(Story's Eq. Pl. 199.)

In the case of The King of Spain et al. vs. Machado et al. (4 Russell's Rep. 225,) the effect of a misjoinder of plaintiffs, came directly before the English Court of Chancery.    In that case, certain individuals, who had been constituted agents of the Spanish government, touching the subject of the controversy joined with His Catholic Majesty, in the prosecution of the suit.    A general demurrer was filed to the bill—in considering which, the *Lord Chancellor* remarked, "if a party having an interest could join with himself on the same record, a party not having any interest, and no advantage of that could be taken, either by plea or general demurrer, it would be productive of great and obvious inconvenience.    But it is not necessary for me to reason on the general principles applicable to the question, or to point out the inconvenience which would ensue, if such an objection were not a ground of general demurrer; because, the point has been decided in two distinct and precise cases, by the present *Master of the Rolls*."    And the demurrer was allowed accordingly.    (See also, Cuff vs, Platell, 4 Russell's

R. 243; Makepeace vs. Haythorne, 4 Russell's R. 244; Troughton vs. Getley, 1 Dick. R. 382.)

It is insisted by the defendants, that Adam Taylor having made the plaintiffs his attorneys, with full power to sue for and collect what might be due him, as sole heir and distributee of the estate of his deceased brother, James Taylor, and also having directed, that whatever money or effects might be obtained by the plaintiffs from that source, should be equally divided between them, to reimburse them for monies advanced and paid for him, in consequence of their having been his securities, as the sheriff of Dallas county, thereby divested himself of all interest, and should not, consequently, have joined in the suit.

Though Adam Taylor has directed his attorneys to divide among themselves, whatever they may receive under the authority given, it is clear, that if a sum more than sufficient to satisfy all advances, costs, &c., should be collected, that he would be entitled to the excess. He must therefore be concerned, to increase the recovery against the defendants, at least to its proper amount, and cannot be regarded as a party without interest.

In general, the person having the legal title in the subject of the bill, must be a party, (either as plaintiff or defendant,) though he has no beneficial interest therein; so that the legal right may be bound by the decree of the court. In cases, therefore, where an assignment does not pass the legal title, but only the equitable title to the property, (as, for example, an assignment of a chose in action,) it is usual, if it be not indispensable, to make the assignor holding the legal title, a party to the suit.

Moore et al. *vs.* Armstrong et al.

Where, however, the assignment is absolute and un-conditional, leaving no equitable interest whatever in the assignor, and the extent and validity of the assign-ment is not doubted or denied, and there is no remaining liability in the assignor, to be affected by the decree, it is not necessary to make the latter a party. In such a case, he is merely a nominal, or formal party. It is a very different question, whether he may not properly be made a party, as the legal owner, although no decree is sought against him; for, in many cases, a person may be made a party, although he is not indispensable. But where the assignment is not absolute and unconditional, or the extent or validity of the assignment is disputed or denied, or there are remaining rights or liabilities of the assignor, which may be affected by the decree, there he is not only a proper, but a necessary party—(Story's Eq. Pl. 147, 148, 149; Blain vs. Agar, 1 Simon's Rep. 37; Trecothick vs. Austin, 4 Mason's Rep. 41 to 44; Millar vs. Bear, 3 Paige's Rep. 467, 468; Whitney vs. McKin-ney, 7 Johns. Ch. Rep. 144; Ryan vs. Anderson, 3 Madd. Rep. 174.)

The direction in the letter of attorney to the plaintiffs, to divide amongst themselves, whatever they might col-lect on account of Adam Taylor, as the heir and distribu-tee of his brother's estate, operated *in equity* as an as-signment in their favor, so as to entitle them to sue in chancery, in their own names. Yet, the *legal interest* still remained in the assignor, who, we have seen, is in-terested in the recovery, inasmuch as he would be enti-tled to a credit against the advances made for him by his securities, to the extent only of the sum collected;

and should there be an excess, beyond what was necessary to their reimbursement, he might claim it as his own. According to the principles we have stated, it will follow, that if Adam Taylor was not an indispensable party, he was at least a formal party, the joining of whom, could not prejudice his co-plaintiffs.

It has been further urged by the defendants, that the chancellor should have sustained their demurrer, if for no other cause, at least on the ground that Samuel Ewing, the administrator *de bonis non* of James Taylor, was conjoined as a party plaintiff.

In Chamberlain, adm'r, vs. Bates, adm'r, (2 Porter's R. 550,) the record discovered that Chamberlain, administrator *de bonis non* of the estate of one Negus, declared in *assumpsit* against the defendant, as the administrator of the former administrator of Negus, to recover a sum of money alleged to have been received by the latter, while the administrator of Negus, and which had never been accounted for, or paid over. The Circuit court sustained a demurrer to the declaration, and this court affirmed its judgment; holding, "that the authority of an administrator *de bonis non*, embraces only such of the personalty of the first decedent, as remains unadministered, viz., *in specie, unaltered or unconverted* by his predecessor." "That the letters or commission of an administrator *de bonis non*, is held to extend, as his title imports, to the *unadministered* assets alone, and so far only, is one in that capacity to be regarded as a trustee for distributees, and representatives of the testator or intestate." If the first administrator has wasted or converted the estate of the intestate, he will be liable himself, if living, and his re-

presentatives, if he is dead, may be charged in equity, to the extent of the waste or conversion, by the creditors or distributees of the intestate; if so much of the assets of their intestate came to hand—(Anthony, adm'r, vs. McCall, adm'r, 3 Blackford's Rep. 86; 2 Williams' Ex'rs, 1064; Price vs. Morgan, 2 Chan. Cases, 217; 3 Bac. Ab. 19, 20; Tingrey vs. Brown, 1 Bos. & Pul. 310; Hagthorp et al. vs. Hook's adm'rs, 1 Gill & Johns. Rep. 270, 274; Coleman, adm'r, vs. McMurdo et al. 5 Rand. R. 51; Thompson, Judge, use, &c., vs. Searcy & Fearn, 6 Porter's Rep. 409.)

In the case before us, it is alleged that the estate of James Taylor had all been administered, wasted, or converted by Wood, the first administrator. It is, then, clear, that the authority of the administrator *de bonis non,* does not extend so far as to allow him to call on his predecessor for an account and settlement. Such is the purpose intended to be effected by the plaintiffs' bill; and Samuel Ewing, not having such an interest in, and connection with, the matters proposed to be litigated, as made him either an indispensable or allowable party, the demurrer was rightfully sustained, for having joined him as a plaintiff.

3. The first bill filed in this case, was against Woods, administrator of James Taylor, and one of his sureties, and the executors of the other surety. Before subpoena was served on Woods, or there was an order to take the bill *pro confesso,* consequent upon the order of publication, Woods, it is said, died without the limits of this State, understood to be insolvent, and it is supposed will have no personal representative. A bill, professing to be

9 P                         89

Moore et al. *vs.* Armstrong et al.

a supplemental bill, was filed, stating these facts, and making the surviving surety, and the executors of the deceased surety, a party. The question now to be considered is, can this bill be sustained?

It is well settled, that no one can proceed against the sureties in the administration bond, at law, who has not first recovered a judgment against the administrator—(Thompson, Judge, &c. use, &c. vs. Searcy & Fearn, 6 Porter's R. 393.) But this rule is not founded upon the supposition, that there is no breach of the condition of the bond, until a judgment is actually obtained. As it is the legal duty of the administrator to pay the debts, &c. of his intestate, and as the securities undertake for the performance of those duties, the bond is clearly forfeited, when instead of thus appropriating the assets, he converts them to his own use—(Ibid. 400, 401.) The rule, however, does not consider the creditor's or legatee's demand of such a grade, as to authorise him to charge the sureties in *an action at law*, until it has been confirmed by judgment.

There is nothing in the constitution of a court of equity, which should induce it, in an ordinary case, to depart from the rules of law, in the administration of justice; yet, as its mode of procedure is materially different—more enlarged and liberal—it must, of necessity, take jurisdiction of cases which the *ordinary forums* cannot reach.

In Bacheldor vs. Elliott's adm'r, (1 Hen. & Munf. Rep. 10,) a bill was filed against an administrator and his sureties, for the recovery of a debt. The incompetency of a court of law to afford redress was not shown, and

Moore et al. *vs.* Armstrong et al.

the court repudiated the cause on that ground, with this remark, " but certainly there are cases where, from some *inevitable necessity*, a creditor may be obliged to come into this court, in the first instance, against the *principal*, and then to prevent a circuity of actions, the *securities* should be made parties ; but this is not one of them."

The case of Moore et al. vs. Waller's heirs, (1 Marsh. R. 488,) was a bill filed by the heirs of Waller, against his executor and his surety, for the recovery of that portion of the estate of their ancestor, to which, under his *will*, they were entitled. It was objected to the jurisdiction of the court, that the remedy should have been sought by action at law. To this, the Court of Appeals answered, " The doctrine contended for, cannot, however, be permitted to prevail. For whatever may be the correct doctrine in a proceeding at law, by the creditors of the testator, the chancellor, when applied to for the purpose of distribution, as he will not do things by halves, but delights in preventing multiplicity of suits, and possesses the power of adapting his decrees to the substantial justice of the case, should, as he will, regardless of the failure in not having previously brought another suit against the executor, hear, and finally determine the liability of the security, as well as that of the principal in the bond."

In general, in the case of joint bonds or obligations, all the parties, obligors, and obligees, are required to be made parties to the suit. And the rule has been sometimes pressed to the extent of declaring, that where the bond is several, as well as joint, all the obligors, whether principals or sureties, must be made parties, (to avoid

circuity of action,) because they are not only entitled to contribution, but also are entitled to have the assistance of each other, in taking the account of what remains due on the bond—(Story's Eq. Pl. 159; Madox vs. Jackson, 3 Atk. Rep. 406; Cockburn vs. Thompson, 16 Vesey's Rep. 326; Bland vs. Winter, 1 Sim. & Stu. Rep. 246.)

Thus, we discover, that cases exist in which an administrator and his securities may be sued in equity, without having first obtained a judgment against the administrator, at law.    That where it becomes necessary to proceed in equity, for the recovery of a debt, legacy, or distributive share, all the obligors in the administration bond should be made parties.    The question now to be determined is, does the bill disclose a case proper for the interference of chancery?    When the first bill was filed, Woods, the administrator, was residing in another State, and there died insolvent, and without a representative.    Under these circumstances, what remedy had the plaintiffs at law?—process could not have been served on Woods, so as to make him a party to a suit at law.    His death did not help the plaintiffs to a legal remedy, but left them to obtain redress (if at all) from the defendants.

The general rule, requiring all interests to be represented, in a suit in equity, is not of universal application, but has its exceptions.    Thus, if it be impracticable to make a party; as where a personal representative of a deceased person is a necessary party; but it is charged in the bill, that no such representative is in existence; for example, if it is charged in the bill that the right of representation is in litigation.    In such a case, the court

Moore et al. *vs.* Armstrong et al.

will retain the bill, notwithstanding the want of parties, and will proceed to a decree, if it can be done without prejudice; and if not, then it will postpone the cause, until the proper parties can be made—(Story's Eq. Pl. 91, 92; Mitf. Pl. 180.)

In the case at bar, there could be no necessity for holding up the bill, but the case should be allowed to proceed regularly to a hearing; inasmuch as Woods died insolvent and abroad, there would be but little probability that an administrator would ever be appointed—besides, as his estate was insolvent, those interested in it could not be materially prejudiced by any recovery against his sureties.

If, then, it were not allowable to proceed against the sureties of Woods *alone*, the plaintiffs, though they had just ground of complaint, would be remediless. This cannot be; for it is the just boast of the common law, that every right has its appropriate remedy, if not in the *ordinary forums*, at least in chancery, which exercises an extraordinary jurisdiction—(Thompson, Judge, use, &c. vs. Searcy & Fearn, 6 Porter's Rep. 409.)

This conclusion has been resisted by the defendants' counsel, and for the purpose of sustaining himself, he has cited two cases decided by the Court of Appeals of South Carolina. In the first, viz : Magwood, adm'r, vs. Butler et al. (Harper's Ch. Rep. 265,) the bill was filed against the administrator *de bonis non*, the surety in his administration bond, and other persons charged to have a portion of the intestate's estate in their hands. On the circuit, a decree was rendered against the administrator *de bonis non*, and his surety, to be satisfied by the sale of

some land and negroes; and if the fund thus raised proved insufficient, then the complainant was authorised to proceed against the surety for the balance. In this case, it appeared that the administrator resided without the State, (yet the bill contained no allegation of his insolvency,) and it was taken *pro confesso* against him. The Court of Appeals affirmed the decree, with the direction, "that the sale of the lands referred to therein, be postponed, until the time shall elapse, which by law is allowed for defendants to come in and set aside the order *pro confesso*, and disprove the demand."

The other case, is Glenn, guardian, et al. vs. Conner, adm'r, et al. (Harper's Ch. Rep. 267.) In this case, the bill was filed by the distributees of the intestate's estate, against the administrator for an account, and against his sureties in the administration bond, to render them liable for what should be found due by the administrator. On the hearing, the bill was dismissed as to the sureties, and the cause was taken up for revision. The Court of Appeals say, "this decision is in conformity with the decided cases in this court. It is founded in reason and justice. The securities are liable only on the failure of the administrator to account and to pay : when that default and its extent is judicially established, then the sureties may be pursued and made responsible. This has not been done in this case; consequently, the bill against the sureties was properly dismissed." That this case is adverse to the opinion we have expressed, cannot be denied, yet the reasoning by which it is sustained, is so unsatisfactory, that we have found it impossible to yield to it our assent. Besides, there seems to us to be

Moore et al. *vs.* Armstrong et al.

such a want of harmony between this and the first case cited from the same book, that we are almost constrained to think that one or both of them must, to some extent, have been influenced by the legislation of South Carolina, of which the opinion of the court does not particularly inform us.

Our conclusion, from a view of the entire case, is, that the demurrer should have been sustained for conjoining as a plaintiff, the administrator *de bonis non* of Taylor, who had no interest in the controversy; and our first impression was, that as the chancellor had sustained the demurrer *generally*, the decree should be reversed and the cause remanded, or reversed, and rendered *specially*, lest allowing it to stand, the defendants might plead it *in bar* to a suit brought hereafter, by those properly entitled. But reflection has satisfied us, that it will not constitute an available bar, as the parties would be different, and that the plaintiffs, with the exception of the administrator *de bonis non* of Taylor, may proceed anew against the defendants. Besides, a general demurrer reaches to a misjoinder of plaintiffs, and the decree is consequently regular—(See cited above, Story's Eq. Pl. 230, 199; The King of Spain et al. vs. Machado et al. 4 Russell's Rep. 225.)

We have only to add, that the decree of the chancellor is affirmed, with costs.