# FOSTER v. MABE.

1. Where the owner of a freehold by a parol agreement permits another to have a house which he had erected, to do with as he will, and with a view to its severance from the freehold ; by this agreement the house becomes a chattel, and may be levied on and sold as the property of him who is invested with the ownership.

2. It is the duty of the sheriff to have personal property present at the time and place of sale, but if this is not done, and a sale made, the property being absent, the sale is not void, but the purchaser acquires the title, subject to be divested by the order of the Court from which the execution issued, setting it aside.

WRIT of Error to the Circuit Court of Greene county.

Detinue to recover a quantity of lumber.

· The cause was tried on the general issue, and a verdict returned in favor of the plaintiff, Mabe, on which judgment was rendered. A bill of exceptions was sealed at the instance of the defendant Foster, which discloses the following facts.

One Alexander was seized and possessed in fee of a lot of land in the town of Eutaw, in Greene county, he made a parol agreement to sell the lot to one Quarles for five hundred dollars. Quarles, under this agreement, entered into possession of the lot, and erected on it several houses, one of which was a frame house, forty feet long, sixteen feet wide, and was built on large blocks resting on the ground. At the September term, 1840, of the Circuit Court of Greene county, one Hines recovered a judgment against Quarles, on which execution issued, and was put in the sheriff's hands on the 25th September, 1840. Quarles having become embarrassed and unable to pay for the lot, made another parol agreement with Alexander, about the first January, 1841, by which it was agreed that Alexander should retake possession of the lot, and pay Quarles for the other improvements, but that Quarles should have the house before described to do as he pleased with. About the 20th of January, 1841, Foster, the defendant, bought the house then standing on the lot from Quarles, for two hundred and fifty dollars. On the 22d of January 1841, the sheriff

levied the execution of Hines on the house as it then stood on the lot, as goods and chattels of Quarles, and sold the same under the execution, on the 8th day of February, 1841. Foster claimed the house and forbid the sale. Mabe purchased it at the sale for one hundred and forty dollars, and had notice of Foster's claim. The house at the time of sale was still standing on the lot. The sale was made before the Court House door of Greene county. The house was more than three quarters of a mile from the place of sale, and could not be seen or examined by those present at the sale; but it was described to the persons then there. After the sheriff's sale Mabe pulled the house down and piled the lumber on the lot; and Foster afterwards removed the greater part of it. Alexander, the owner of the lot, was aware of the levy, and set up no claim to the house.

On this state of evidence the Court charged the jury, that if there was an agreement between Quarles and Alexander that Quarles was to have the house and dispose of it as his own, this was a severance which made the house a chattel of Quarles' and it was liable to be levied on and sold under the execution against him. Also, that though as a general rule, a chattel sold by the sheriff ought to be present at the time and place of sale, yet this general rule must be taken with some qualifications, and if the jury believed, from the peculiar nature and situation of the house, and the description given of it by the sheriff, the bystanders could form a correct idea of its value, the sale would not be void because the house was not present so as to be examined by the bystanders.

Foster excepted to these charges, and now seeks to reverse the judgment on the ground that they are erroneous.

Jones, for the plaintiff in error, submitted—

1. That the house, under the facts stated, was either a real estate or a fixture, and not a chattel; therefore not subject to levy and sale. [2 Bac. Ab. 714; 2 Kent's Com. 279; Elwes v. Mawe, 3 East, 38; Goddard v. Bilster, 6 Greenl. 427; Winn v. Ingleby, 5 B. & Adol. 7 E. C. L. R. 214; Farrant v. Thompson, 5 B. & Adol. 7 E. C. L. R. 272.]

2. Conceding it to be a chattel, the sale was void and passed no title, in consequence of its not being present when sold

by the sheriff. [Shelden v. Soper, 14 John. 353; Linmadole v. Doe, id. 222; Cresson v. Stout, 17 id. 115; Blount v. Mitchell, Taylor's N. C. Rep. 131; McDaniel v. Moody, 3 Stewart, 314.]

CLARK, contra, insisted that inasmuch as the owner of the lot had consented to the severance of the house from the freehold, it became a chattel, and subject to be seized by execution. [1 B. & A. 161; 1 Taunt. 19; 20 John. 29; 2 Peters', 137; 1 Starkie's Rep. 43; 1 Salk, 368; 4 Mass. 514; 3 McCord, 553, 557; 2 B. & C. 76; 1 Hill's N. Y. 176; Gibbon on Fixtures, 48.]

In answer to the second position assumed by the plaintiff in error, he insisted that this was a question only to be raised by the defendant in execution. [Cotton Press v. Moore & Magee, 9 Porter, 679; Jones v. Davis, 2 Ala. Rep. 34; Ware v. Bradford, id. 676; Brown v. Lipscomb, 9 Porter, 472 : 4 Rand. 427; 3 Caines, 267; 8 John. 364; 18 id. 367; 1 N. & McCord, 11, 408; 5 John. 345; 2 Bibb, 401; 3 id. 216; 3 J. J. M. 213; 7 Dana, 388; 1 Missouri Dec. 754; 2 Mar. 364.]

GOLDTHWAITE, J.—1. The validity of the sheriff's sale, through which the plaintiff in the Court below derived his title to the lumber sued for, is denied; and one of the objections to it is, that the house was not a chattel subject to execution.

As between Alexander, the owner of the fee, and Quarles, who was in possession under him as a purchaser, no question arises, for both of them have treated the house as mere personal property. We must then consider whether their action in this respect has the effect to determine the character of the house as real or personal estate. It is said that the law by which a trade tenant is permitted to have an interest in fixtures erected by him and attached to the freehold, is an exception to the general law, which Courts have always, since the case of Elwes v. Mawe, [3 East, 38,] refused to extend beyond that class of tenants; but this we apprehend, is not the precise question in this case, which is rather whether the owner of the fee can so deal with a fixture, as to divest it of its character of real estate.

The first case bearing on this point, which is found in the

books is in 1 Lord Raymond, 182, where Treby, Chief Justice, said the question arose before him, whether the sale of lumber growing upon land, ought to be in writing under the statute of frauds, or might be by parol. And he was of opinion, and so ruled, that it might be by parol, *because it is but a bare chattel.* So likewise corn or other crops growing or sown on the grounds *which go to the executor,* may be sold under a *fieri facias.* [Dalton 556, cited in Watson on Sheriff, 130.] In these cases it is evident that the thing sold, or subject to execution, is attached to, and if the question arose between a vendor and vendee, would be considered as a part of, the freehold, and pass with it; but in the first case put, of the timber, the act of the party had reference to its severance from the land; and in the last, of the growing crops, this same consequence was in view from the time of planting. In both the intention of severance determines the character of the thing. The same idea is very fully illustrated by some of the decisions under the statute of frauds in those cases, where the question whether an interest in lands has been sold so as to require the sale to be evidenced by writing.

The sale of a *growing* crop was formerly considered in England as conveying an interest in the soil by which it was to be nurtured and matured. [Crosby v. Wadsworth, 6 East, 602; Emmerson v. Heelis, 2 Taunt. 38.] But when the crop has *ceased to grow,* and is at maturity, a different rule is supposed to govern. [Parker v. Staniland, 11 East, 362.] And in this last cited case the true rule is adverted to, though not distinctly set out—that an immediate severance from the land of the article grown was in contemplation of the parties.

The sale by a landlord to his tenant of fixtures attached to the estate, and *vice versa,* has never been considered as within the statute. [Hallen v. Render, 3 Tyr. 959, cited Gibbon on Fixtures, 48.] And it is evident that these decisions could never have been regarded as correct in principle upon any other ground than that the fixtures, by the agreement of the parties, were treated as chattels, with a view to an ultimate severance from the freehold. Many other decisions analagous in principle, it is supposed, might be found in the English Reports, but these are amply sufficient to show, that where a matter connected with the freehold is a personal chattel when

severed, it may be treated as such whenever either the law or the agreement of the parties contemplate an actual severance. A case more strongly illustrative of the rule than any of the English decisions, is Bostwick v. Leach, [3 Day, 476,] where an agreement to purchase the mill stones, running gear and other fixtures then attached to a mill, was considered as an agreement for the sale of *chattels*, and thefore not within the statute. It is there said, "when there is a sale of property which would pass by a deed of land as such, without any other description, if it can be separated from the freehold, and by the contract is to be so separated, such contract is not within the statute."

Such are the contracts for the purchase of gravel, stone, timber trees, and the boards and bricks of houses, to be pulled down and carried away.

In the case before us, it is not expressly stated that Quarles was to remove the house immediately after the purchase, (for such we consider it,) from Alexander; but the inference is warranted that a removal within a convenient time, was contemplated by both parties. The moment that Alexander consented that Quarles should do as he pleased with it, the house became a personal chattel, and was consequently subject to levy and sale as the property of Quarles, under the execution of Hines.

2. The other question is one of less difficulty, and is in some degree within the influence of previous decisions of this Court. It is supposed the sale was void, because the property was not present at the time and place of sale. Nothing is more clear than the duty of the sheriff to have the property present at the time and place of sale; and the reason is obvious—he is directed to sell the property at public vendue, and to be sold well it should be exhibited; but this is a matter which concerns no one but the defendant in execution, or possibly some other execution creditor. And the first, and probably the other likewise, may set aside an irregular sale on timely application to the Court from which the execution issued, as was done in the case of the Mobile Cotton Press v. Moore & Magee, [9 Porter, 697.] The course of proceeding there indicated is sufficient to preserve the rights of the parties from invasion by an irregular sale. The case of Brown v. Lipscomb, [id. 472,] establishes

that when property is sold by a trustee, which is held adversely at the time of sale, nothing passes to the purchaser, because in such a case, the attempt to sell is against public policy, as a right of action only is then vested in the trustee. In other respects this case sustains the doctrine that a stranger, or one claiming by a title subordinate to the trustee, cannot avail himself of an irregularity in the sale. The case of Ware v. Bradford, [2 Ala. Rep. 676,] determines that the defendant in execution cannot collaterally impeach the regularity of a sheriff's deed of land. The same was held as to personal property in Fournier v. Curry, at this term. These cases are considered as conclusive of the present case on this point; and we may farther add that there is no reason applicable to sales of real estate which will not apply with the same force to sales of personal chattels, except only where there is an adverse possession, which does not affect the former but will avoid the latter.

By the levy the sheriff had obtained all the possession he could without removing the house, and we must presume, in the absence of any evidence to the contrary, that he invested Mabe with it. This made the title of the latter complete against every one claiming under the defendant in execution, until the sale was set aside by the Court from which the execution issued.

We have omitted all examination of the authorities cited from New York to show that a sale of this description is void, because if such is the law in that State, it could have no influence to change our decision, for the reason that our own system must govern, and harmony ought to prevail between the decisions applicable to real and those of personal estate.

Our conclusion is, that there is no error; and the judgment is therefore affirmed.