## BARASIEN vs. ODUM.

Under the peculiar system of administration laws of this State, it is inconsistent with the tenor and policy of those laws to hold that any one can make himself, of his own wrong, the executor of another—where one intermeddles with the estate of a deceased person, he is responsible to the rightful executor or administrator, and not to a creditor, as an executor *de son tort.*

According to the common law it is error to render judgment *de bonis propriis* against an executor, in the first instance, except where by failing to plead, or by pleading, he had admitted waste.

*Appeal from the Circuit Court of Independence County.*

Hon. BEAUFORT H. NEELY, Circuit Judge. .

FAIRCHILD, WATKINS & GALLAGHER, for the appellant. It is a serious question whether under our comprehensive administra·tion system, as regulated by statute, there can or ought to be such a thing in this State as an executor *de son tort.* The courts of Probate are, in the first instance, the custodian of all estates. The policy of the administration law, is to have a speedy administration of all estates. Every facility is afforded for having letters of administration taken out by the heir, creditor, any indifferent person, or the sheriff; and the estate should be preserved, *as a trust fund,* for the payment of debts without preference, and for distribution. This entire policy would be defeated, if any person could, by obtaining possession of the assets, subject himself to an action as executor *de son tort.*

Mr. Justice HANLY delivered the opinion of the Court.

The appellee sued the appellant as executrix *de son tort* of her late husband, before a justice of the peace of Independence coun·ty, on an account made by the decedent in his life time.

Judgment was rendered by the justice against the appellant, *de bonis propriis*, from which she appealed to the Circuit Court of Independence county, and upon a trial *de novo* in that court, judgment was again rendered against the appellant *de bonis propriis*. Having made a motion for a new trial in the court below, and her motion overruled, she excepted, setting out, in her bill of exceptions, all the testimony adduced at the trial, but which we do not deem it necessary further to notice or state. The cause is brought to this court by appeal, and sundry errors are assigned, for which it is insisted the judgment of the Circuit Court must be reversed. As we have omitted to state the facts, and as several of the errors assigned pertain to them exclusively, we will not consider them, but at once proceed to determine the points upon which the cause must therefore rest.

It is submitted to this court, by the counsel for the appellant, to determine whether, under the peculiar system of administration laws of this State, it is not inconsistent with the tenor and policy of those laws, to hold that any one can make himself, of his own wrong, the executor of another.

We must confess that we approach this question, not without embarrassment and difficulty, on account of its intrinsic importance and utter novelty; for we are not aware that the question proposed has ever been the subject of investigation or enquiry in any of the courts of this State, up to the present time; and from our researches into the adjudications of the courts of other States, we find but few instances in which the question has been looked into or passed upon.

It would have been more agreeable, if the parties to the record in this cause had both been represented by counsel in this court, to the end that we might have had the benefit of a full argument of the question on both sides, so that we could have availed ourselves of their researches and reasoning, acknowledging, as we are ever happy to do, the advantage that we are accustomed to derive from such sources, particularly in those cases where the question to be determined is new, and where there are no, or few precedents to be found bearing on the subject.

But the question has been presented, and we do not feel ourselves at liberty to waive it. We will, therefore, at once proceed to its solution.

It is an unquestionable fact that the subject of administration, and the management of estates of deceased persons in this State, is one of vast moment and the first importance to every department of society.

It is likewise true, that the legislative department of the State, under an express power conferred upon it by the constitution, has prescribed a system of administration laws, designed evidently to protect the entire interests connected with the subject, and which must, tô subserve the purposes of its establishment, be executed as an entirety ; for otherwise, in that, as in every other work composed of dependent parts, the destruction of one member or part must disturb or destroy the harmony and operation of the whole.

The constitution has ordained courts of Probate throughout the State, and has conferred upon them jurisdiction in matters relative to the estates of deceased persons, executors, administrators and guardians, thereby restricting the Legislature only so far as to take from it the power to inhibit the exercise of such jurisdiction, expressly conferred upon those courts, but conferring upon this department the express authority to prescribe the mode and manner in which the general jurisdiction, thus bestowed upon the courts of probate, should be exercised and executed. See *Constitution of Arkansas, sec. 10, art. 6.*

By reference to the various acts of the General Asssembly passed on this subject, it will be perceived how well and thoroughly the Legislature has carried out the intent and meaning of the constitution in this respect. Auxiliary powers, such as the Legislature, in its wisdom, conceived necessary to enable the Probate Courts to exercise effectively the general jurisdiction conferred upon them by the constitution, have been superadded, so that no p ower is wanting on the part of the Probate Courts to enable hem to exercise both the general and special jurisdictions inher-

ent therein, derived from the constitution and the legislative grants made in conformity therewith. We say, then, that the Legislature has done every thing, that was proper and necessary, in this connection. The object and design, which it had in view, are sufficiently manifest from the several acts which have been passed on the subject. The success of the system devised in reference to the jurisdiction of courts of probate, "relative to the estates of deceased persons, executors, administrators and guardians," must depend, therefore, in a great measure, upon the judiciary, to whom has been confided the power to construe and interpret the laws, as they find them, in pursuance of known and fixed rules ordained for that purpose by the wisdom of ages long past, and maintained by the acquiescence of the great minds that have adorned the world in later times.

Before proceeding to the consideration of our several statutory provisions in reference to the administration of estates, and to an analysis of them, with the view of elucidating the subject under notice, it may not be unprofitable to refer (by way of introduction to the main subject) to a portion of the common law bearing on the subject, that we may contrast the consequences which would result from a maintenance of the remedy sought in this instance, with the one prescribed by our statutes.

An executor *de son tort* is defined to be a person who, without authority from the deceased, or the law, does such acts as belong to the office of an executor or administrator. See 4 *Bacon's Abr.*, *Title* Executors and Administrators, (*B.*) 3.

An executor of his own wrong at common law was, in general, only liable to the amount and value of the assets which really came to his hands, and in such cases, when a recovery was had against him, the judgment was *de bonis testatoris*. See *Toller on Exrs.* 473; *Dyer* 166, *C. Note* 11.

And this judgment, being rendered at the suit of a creditor of the decedent, was executed for *his* benefit, to the exclusion of the other creditors, however numerous, and never so meritorious. See *Whitehall vs. Squire, Carthen* 104; *Toller's Exrs.* 472, *text and note* 1.

This, then, was the effect and consequence of a proceeding at the suit of a creditor of a decedent, against an executor *de son tort*, for a debt due by the decedent debtor, according to the course of the common law; and the remedy attempted to be pursued in the case at bar. But such is not in accordance with the letter or spirit of our law, as it evidently cannot be with its policy. In our "system, two capital objects seem plainly in view, from the various provisions for their attainment; *first*, that the estate of every deceased person, after death, shall *immediately pass to the custody of the law*, to be administered for the benefit of creditors; and after the satisfaction of all claims against it, * * * * . * the residue shall be passed to the heir or distributee," &c. See *Walker adm. vs. Byers*, 14 *Ark. Rep.* 252. Says this court in the same case : "The Probate Court is intrusted with the custody of estates ; and that tribunal proceeds, *in rem*, to adjust the rights of all persons interested in an estate, and disposes of it, in accordance with the provisions of the statute ; having, for these purposes, the most summary and plenary powers, within the scope of its jurisdiction, conferred by the constitution and statutes, administering both law and equity within this scope according to the exigency of the rights to be adjudicated upon," &c.

Our statute has provided for the authentication and exhibition of claims against the estate of a deceased person, and has prescribed a particular mode in which this shall be done. It has also established the order in which claims thus authenticated and exhibited shall be paid. It has directed in what mode personal and real estate may be sold for the payment of debts, and the purposes of administration generally. It has prohibited the payment of debts due by the decedent, except in the order prescribed, and under the especial direction and order of the Probate Courts. It has restricted the liability of executors and administrators to the actual value of the effects which may be administered by them, and has exempted them from liability in consequence of false pleading, and, as a greater security for the ad-

ministration of estates, has required executors and administrators to take an oath that they will faithfully administer the effects of the decedent; and, in addition to this, has required each to enter into bond with security, for the faithful execution of the trusts.

We have already seen what the common law provisions are in respect to a proceeding against an executor *de son tort*, the kind of judgment to be rendered in such case, the mode of its execution, and finally, for whose benefit executed.

We think there can be no doubt, but that the provisions of our statute are so thoroughly inconsistent with the provisions of the common law, in respect to the remedy sought in this case, that we may safely say, that such a proceeding is unknown to our law, and we are sustained in this view by an adjudication of the Supreme Court of Ohio, where similar statutory provisions to our own exist. See *Dixon vs. Cassell*, 5 *Ohio Rep.* 341, 342.

Independent of the foregoing considerations, we would say that there is no necessity for such a remedy in this State. The *46th, 47th and 48th sections of the 4th chapter of the Digest*, provide a remedy against all persons who may conceal or embezzle effects belonging to the estates of deceased persons, at the instance of any one interested, which is more effective and simple than the remedy existing by the common law against executors *de son tort*, and by pursuing the statutory course the property recovered or reclaimed is appropriated, as assets of the estate, to the payment of debts or distribution. Not so, in proceeding against an executor *de son tort*. If the proceeding is at the suit of a creditor of the decedent, and a recovery is had, his judgment, as we have before shown, is *de bonis testatoris*, and when executed, it must be executed *de bonis testatoris*, and that too, to the exclusion of all other creditors, less vigilant, but equally meritorious, and for the benefit of the person in whose favor the judgment was rendered.

The *40th and 41st sections of the 4th chapter, and the 70th section of the 126th chapter of the Digest*, would seem to militate against our views above expressed; but, by reference to those sec-

tions, it will be perceived, that the executors of their own wrong referred to in those sections, are only such in a particular sense, the denomination being used by the statute, without retaining the incidents usually appurtenant to the denomination. Besides this, by reference to those sections, taken in connection with the context, it is evident that in the instances proposed, in which a person might make himself an executor of his own wrong under our statute, the remedy provided against him is evidently intended to be at the suit of the rightful executor or administrator. In which event, the judgment recovered against him would at once become assets in the hands of the representative of the estate for the payment of debts, or distribution to heirs, and thus carry out the general scope and meaning of the whole act, making each part consistent with itself, and not inconsistent with the whole.

Entertaining these views, we are constrained to hold the judgment of the Independence Circuit Court, rendered in this cause, erroneous.

But there is another reason why the judgment of the court below should be reversed. It will be observed that it is rendered *de bonis propriis*. To authorize such a judgment there should have been a judgment *de bonis testatoris*, first rendered, and upon the return of an execution issued upon this judgment, *nulla bona*, a *sci. fa.* could have been issued, and on inquiry of waste, if found against the defendant, judgment would follow, as a matter of course, *de bonis propriis*. This was the uniform course at the common law, except when the party in the original suit would, by failing to plead, or by pleading, admit waste, in which case it was usual to have judgment *de bonis propriis*. See *Markham's Ex. vs. Allen*, 8 *B. Mon. R.* 418; *Carroll, etc. vs. Connet*, 2 *J. J. Marshall's Rep.* 208; *Toller's Exrs.* 472, *note* 1, *citing Stockton vs. Wilson*, 3 *Penn. Rep.* 129; *Howell's adm. vs. Smith*, 2 *McCord's Rep.* 517 ; *Norfolk's Exr. vs. Gantt*, 2 *Harr. & Johns. Rep.* 435.

Wherefore, the judgment of the Circuit Court of Independence county, for the errors aforesaid, is reversed, and the cause remanded, with instructions to said court to proceed according to law, and not inconsistent with this opinion.