## MOREN ET AL. VS. McCOWN ET AL.

The Probate Court has the exclusive right to grant letters of administration on estates of deceased persons, etc., and make settlements with administrators, which shall be final, unless upon a charge of fraud, made in chancery and supported by affidavit: and a Court of Equity has no power to withdraw from the Probate Court the administration of the assets of an estate, and assume the settlement thereof.

But the Court of Chancery having assumed jurisdiction of an administration, and,

under its authority, the administrator having paid debts and made sale and distribution of the property, these acts are confirmed as done by consent; and the amount due by the administrator having been ascertained by decree of the court below, this court, in reversing such decree for want of jurisdiction, and ordering the administration to be remitted to the Probate Court, will direct the administrator to be charged with such amount, and be allowed credit for such sums as he may be entitled to.

This court, adhering to the decision in the case of *Clark vs. Shelton,* 14 *Ark.* 480, that a bill in chancery may be maintained against the principal and his securities in an administration bond, and a decree rendered against them for the amount found due upon final settlement, in a case where a court of equity has jurisdiction over the principal, are not inclined to extend the principle to a case in which the administrator nor his representative is made a party.

*Appeal from Hempstead Circuit Court in Chancery.* ·

Hon. LEN B. GREEN, Circuit Judge.

GARLAND & RANDOLPH, for the appellants.

WATKINS & GALLAGHER, contra.

Mr. Justice FAIRCHILD, delivered the opinion of the Court.

Three several matters of consideration are involved in the cross appeals of this case; the liability of the sureties upon the administration bond of Elizabeth Moren, the first personal representative of Samuel Moren, deceased; the decree to be rendered concerning the administration of Edward S. Johnson, who became the administrator of the goods that were unadministered by Mrs. Moren; and the action of the court below upon the purchase of slaves from Mrs. Moren, and from her vendees, which are claimed by the bill to belong to the heirs of Samuel Moren.

We do not know why the Circuit Court sitting in chancery should have taken control of the estate that Edward S. Johnson was administering under the authority, and subject to the direction of the Probate Court. That court has the exclusive right to grant letters of administration, to revoke them, to pass upon the original

,OF THE STATE OF ARKANSAS. **95**

Term, 1861.]                Moren et al. vs. McCown et al.

securities, and to determine when new bonds shall be given by an administrator, and to make settlements with him, that shall be final, except upon charge of fraud, made in chancery, supported by the affidavit of the person making the charge. This jurisdiction is valueless if circuit courts at will, or upon suggestion, can withdraw an administration from the Probate Court to a court of equity. When properly in equity, administrators will be treated as trustees; but the ordinary course of administration must be confined to the authority of probate courts; the settlement of estates must be made in them by the constitutional and legal power belonging exclusively to them, or there will be an utter confusion of jurisdictional distinctions. The clause in the Constitution conferring jurisdiction in matters of equity to circuit courts till the establishment of courts of chancery, does not conflict with this conclusion, for the mere settlement of an estate is not a matter of equity.

The power to transfer the administration of Samuel Moren's estate from its constitutional and legal forum must not be conceded, because it was assumed to exist in the bill, or because it was exercised by the court, as no effectual resistance could be made by the administrator till final decree, and by appeal.

So far as the estate has been administered upon by appropriation of its assets to demands and costs, or by sale, partition and distribution between the heirs, what has been done by the court below will not be disturbed: will be confirmed as done by consent of parties. But the decree against Johnson, and Witter and Mitchell, his securities, in the administration, for the amount found against him as administrator, cannot be sustained. The administration is to be discharged from the Circuit Court of Hempstead county, sitting in chancery, and is remitted to the Probate Court, where Johnson will be charged with the sum for which the Circuit Court rendered a decree against him, to-wit: five thousand, one hundred and twenty-eight 21-100 dollars, and with such interest as has accrued on that sum since the first of January, 1858. And the Probate Court will settle with the administrator for such sum as if he had been charged

**96**        CASES IN THE SUPREME COURT

Moren et al. vs. McCown et al.      [JANUARY]

with it in the Probate Court in the usual course of administration, giving him such credits as he may by law be entitled to, if any loss be proved to have been sustained out of the amount so charged, by his inability to collect any part of it that was due for the hire of negroes, and that was not on hand on the 1st of January, 1858. On this branch of the case no costs are to be paid by Johnson individually, but the costs in this court are to be paid by him, for which he will have credit in his settlement with the Probate Court. This settlement is to be speedy, and a final one ; and in the distribution of the assets in Johnson's hands among the heirs of Samuel Moren, only the plaintiff's heirs are to be bound by the appropriation of five hundred and eleven 99-100 dollars by their counsel, as shown in the record.

The cases of *Clark vs. Shelton,* 16 *Ark.* 481 ; *Moss vs. Sandefur,* 15 *Ark.* 381, and *Dooly vs. Dooly,* 17 *Ark.* 122, only define the jurisdiction of the Probate Court not to extend to contests of the ownership of property between persons claiming it by adverse titles. They all concede the jurisdiction of the Probate Court to determine the responsibility of the administrator upon the admitted assets of the estate ; and that is precisely what the Probate Court in this case was prohibited from doing by the withdrawal of Johnson's administration of Samuel Moren's estate from the Probate Court of Hempstead county to the Circuit Court sitting in chancery.

A more important point in this case depends upon the appeal of the securities of Mrs. Moren, the first administrator of the estate of Samuel Moren, against whom a decree was rendered for three thousand and eighty-nine 48-100 dollars, it being made up of the balance against her in an account stated in this case, in the court below, upon her administration, and of nine and one-third years interest thereon. This amount does not seem to include charges against Mrs. Moren for any of the negroes of the estate, which she is charged to have sold, or in some way applied to her own uses.

Ordinarily, the liability of the sureties in an administration

bond, resting alone upon the bond, upon which the legal remedy is adequate, is determinable only in courts of law. *Boteler vs. Brooks*, 7 *Gill & Johns*. 150. And an action at law upon the bond is not sustainable till the probate court has adjusted the account of the administrator, and ordered him to pay over an amount found to be in his hands. *Baker vs. The State*, 21 *Ark*. 408. The same principle has been applied by this court to the bonds of guardians and collectors. *Sebastian vs. Bryan*, 21 *Ark*. 450; *Jones vs. The State*, 14 *Ark*. 172. The policy of our law is to hold the remedy on an official bond, in a court of law, subject to the action of the tribunal established to adjust the accounts of the party, who, by his default, is alleged to have forfeited his bond. But in *Clark vs. Shelton*, 14 *Ark*. 480, this court held that a bill in chancery could be maintained against the principal and his securities in an administration bond, under which the liability of the principal would be first ascertained, and upon which a decree could be rendered against the securities for the amount of that liability, upon its not being discharged by the principal. This was held to avoid a multiplicity of suits; for, as the securities would, at last, be obliged to answer for the default of their principal, it was held better to allow that they should be brought into the suit with him, when they could contest their own responsibility, and also observe the proceedings in which the principal should be condemned, than to drive the plaintiff to the prosecution of two suits; one to have the liability of the principal decreed, and another to recover its amount from the sureties by an action upon the bond. This case seems to rest upon good authority. *Ennis vs. Smith*, 14 *How*. 418; *Spottswood vs. Dandridge*, 4 *Mun*. 289; *Carow vs. Mowatt*, 2 *Edw*. 66. But although we do not decline to follow the case of *Clark vs. Shelton*, we are not inclined to extend its principle to a case presenting a dissimilar state of facts. In that case, the jurisdiction over the principal was unquestioned. That state of case, with the ultimate responsibility of the securities, extended the jurisdiction of chancery over them, which was incidental to, and dependent upon, the undoubted right of

the court to take cognizance of the acts of the principal.   In that suit, all the defenses of the securities could be made, and the decree against the principal, and against them, would be conclusive for them, in any action they might bring against the principal, for any indemnity on account of the decree and its performance on their part.   In this case the principal was dead, no personal representative of her was in court; when her securities shall have paid the decree rendered against them, they will have no cause of action against her estate but what will be disputable, for it will not be bound by proceedings to which it, or any person representing it, was not a party.   And although it had been alleged and proved that Mrs. Moren died insolvent, and with no expectations of any estate to fall to her, the legal principle would not be altered.   The next case that would arise under the affirmance of the decree of the circuit court, might be where there was an indemnifying fund, and the sureties would have to show the legality of the decree against them, because their principal was not a party to it, and it would not be a charge upon the fund.   The effect of the Virginia rule, as followed by this court in *Clark vs. Shelton,* goes far enough in extending the jurisdiction of chancery over a purely legal obligation: and we cannot, by a further extension, hold the securi-ties of Mrs. Moren accountable in an independent proceeding, and which will not afford a legal right for their indemnity.

None of the authorities cited, or of the several Virginia, and other decisions upon this subject, which we have been able to find, show the exercise of an equitable jurisdiction over securi-ties, in the absence of the principal, or of his representative, or of persons interested in his estate.   But the case of *Moore vs. Armstrong,* 9 *Porter* 709, was such a case, and was sus-tained by the Supreme Court of Alabama.   The doctrine of that case is acknowledged, in the opinion, to be opposed to decisions of South Carolina; and it is inconsistent with the conclusion to which we have arrived.   It is founded upon the right of persons interested in an estate, to have relief against the securities upon a forfeited administration bond, and the

want of means of enforcing a legal remedy on the bond when the principal has made no settlement, or has not, in the proper court, been adjudged to have wasted the estate. We do not consider that such legal inability existed in this case.

The securities of Mrs. Moren, by the decree of the court below, are to pay an amount she owed to the estate of Samuel Moren, which amount was ascertained when there was no person to represent her before the court.

For the reasons herein given, the decree of the court upon this branch is disapproved, and the bill, as against Mrs. Moren's securities, and the representatives of one of them, is dismissed with costs.

What would have been our opinion upon the merits of this case we need not say; but we will not forbear expressing our gratification to find that this suit, though in the names of the heirs of Samuel Moren, is mainly prosecuted by, and on behalf of strangers, in blood, to the widow, and first personal representative of the owner of the property. The case shows that Mrs. Moren was left with a family of nine children, the oldest of whom was young enough to be a charge upon her, with a parcel of negroes of such a sort as that, through helplessness from infancy and child bearing and age, the most of them served only to increase her cares and expenses. And because the struggles she made to keep her children together, and to raise the servants for the children, were not self-sustaining efforts at the time, this suit was begun to make the deficiencies good out of her securities, and in the names of those who owed gratitude to her motherly trials, and oblivion to her womanly failures. Though, it need not be said that she was unsuccessful, for her family was kept around her own hearthstone while she lived; and the negroes, that were useless and burdensome to her, by their growth and increase of price, have become a valuable estate to her children, which never could have been, if she had acted with the children and servants according to the strict rules to which her securities are sought to be held, amenable in this court.

Upon the third part of the case, that which makes Collins, Shower, the Blocks, Phillips and Pettigrew parties, to cause them to deliver up or account for certain slaves, or to make the securities of Mrs. Moren pay for them, little need be said. For Shower, the only one of these against whom the heirs could maintain a suit, has not possession of the negroes sold to him, and the case seems to be abandoned against him, on account of his insolvency, and the value of the slaves is sought to be charged against the securities.

It is not proved that Mrs. Moren sold Ben to Collins, while the ownership of Bryant, Peggy and Lucy never was in the estate, so as to charge Phillips, Pettigrew and the Blocks, with having its property; although, as between Mrs. Moren and the estate, the fact may be, though not proved to be, that the cotton that paid for Bryant, and the difference between him and Peggy and Lucy belonged to the estate.

Any relief concerning any of these negroes could be afforded only by virtue of this part of the case being joined with others that were grounds of equitable interference. Such not being the case, we are spared the review of the dismissal of the bill decreed by the court below upon this branch of the case.

The end of the whole case is, that calling all the decrees of the court below one, it is reversed, and the bills of the plaintiffs are dismissed, such decree of dismissal being entered here as should have been made by the court below. And the case is remanded, only that the administration of Johnson upon Moren's estate be remitted to the probate court, as directed in this opinion.