DAVID BOSTWICK, jun. *against* WILLIAM LEACH.

MOTION for a new trial.

This was an action of *assumpsit*.

A contract for the sale of things annexed to the freehold, but which are capable of separation without violence, and by the terms of the contract are to be separated, is not within the statute of frauds and perjuries.

The declaration stated, that the plaintiff was the owner of a grist-mill; and the defendant, having it in contemplation to build one within a short distance, and being desirous of procuring materials for it, as well as of securing to it, when built, the custom of such persons as usually went for grinding to the plaintiff's mill, proposed to the plaintiff that he should stop his mill on the first day of *January* then next, and the defendant would purchase the mill-stones, running geers, bolt, tackling, tools and utensils, which belonged to and were removable from the mill, and would pay the plaintiff for the same the sum of four hundred dollars. To this proposition the plaintiff acceded, and had performed every thing to be done on his part.

Nor is an agreement not to exercise a right regarding the freehold, as to use a mill, or to carry on a trade in a particular shop, within the statute.

The statute contemplates a *transfer* of lands, or some interest in them.

The defendant pleaded the general issue.

On the trial, the plaintiff offered to prove his case by parol evidence. It was agreed, that the plaintiff's mill was what is commonly called a *gig mill*, standing on a small stream of water; that the mill-stones were laid in the mill for the purpose of grinding in the same manner as mill-stones are usually placed in such mills for that purpose, *viz.* by the bed stones being laid upon the floor timber of the mill; that the running geers consisted of a horizontal water-wheel, the shaft of which was upright, which passed through the lower mill-stone for the purpose of turning the upper mill-stone; that the lower part of the shaft rested and turned on a pivot at the bottom;

and that the wheel was turned by the water being received in the usual manner of mill wheels of that description. It was also agreed, that the mill-stones, running geers, &c. were, at the time of the contract, in actual use for the purpose of grinding, and have never since been removed, but might be removed without doing violence to the mill-house, and without even so much as the drawing of a nail. It was further admitted that the plaintiff stopped his mill on the first day of *January*, according to his agreement, and the next day gave notice thereof to the defendant.

The defendant objected to the admission of the evidence offered, on the ground that the contract set forth in the declaration, and offered to be proved, was a contract for the sale of lands, tenements, or hereditaments, or some interest in or concerning them; and not being in writing, was, therefore, within the statute of frauds and perjuries. But the court overruled the objection, and admitted the evidence.

A verdict being found for the plaintiff, the defendant moved for a new trial.

*N. Smith* and *Hatch,* in support of the motion.

The general question in this case is, whether the contract set forth in the plaintiff's declaration can be proved by parol? We object, that it is such a one as is required, by the statute of frauds and perjuries, to be in writing. The clause of the statute relied on is that which relates to the " *sale of lands,*" &c.

1. The first inquiry is, whether any of the several articles of property, at the date of the agreement, were of such a nature as to be comprehended by the words of the statute? On this point it is hardly possible to

conceive that a doubt should have been entertained. As to a part of them, they were annexed to the freehold, and would pass by a deed conveying the land. 2 *Bl. Com.* 17, 18. They would descend to the heir, and not to the personal representative, and might be set off to a widow as dower. *Co. Litt.* 32. a. 2 *Bl. Com.* 139. They are the subject matter of waste. In the case of *The City of London* v. *Greyme, Cro. Jac.* 182. it was determined, that it is waste to convert a corn-mill into a fulling-mill, although the conversion be for the lessor's advantage. At the date of the agreement, they would not have passed by a will, unless it had been duly executed to pass lands; nor could they have been the subject matter of felony; or have been taken and sold, on execution, as personal property. Indeed, a case can hardly be imagined, in which things of this kind, annexed to the freehold, are not treated, and considered as a part of the land. It is a correct rule, that where legal phrases occur in a statute, they are to be considered according to their acceptation at common law. If this rule be received, and applied in the construction of the statute of frauds and perjuries, it must terminate this part of our inquiries.

But we shall be told, that the mill-stones, bolt, and running geers, though annexed to the freehold, might have been dissevered from it; and thus converted into personal chattels; that they were sold with a view to a severance, and, therefore, that the sale is not within the statute. These positions require examination.

A contract derives its obligation from the assent of the parties legally expressed or evidenced; and, of course, must be obligatory, if at all, at the time it is made. It would seem, therefore, as if it must have respect to the nature and condition of the property which is the subject matter of it at that time; and that, if not binding then,

it can never become so by reason of any change in the property.

The only case, which can be found, to support a contrary doctrine is that of an anonymous case in 1 Ld. *Raym.* 182. in which it is said to have been ruled, that a sale of standing timber is not within the statute. This, however, was merely the decision of a single judge (*Treby*, Ch. J.) at *nisi prius*, and is very loosely reported. It would therefore hardly be entitled to much respect, as an authority, even if it stood uncontradicted. But it has been directly overruled. The case of *Crosby* v. *Wadsworth*, 6 *East*, 602. where the same question came to be very fully considered, was solemnly decided the other way. This determination is justly treated by several late writers, as settling the point in debate. 1 *Comyn on Cont.* 76, 77. *Peake's Ev.* 214. Even *Roberts*, who in the body of his treatise on the *English* statute intimated an opinion in favour of the rule as laid down by Chief Justice *Treby*, has, since the decision in *Crosby* v. *Wadsworth*, retracted that opinion, and acknowledged that it was ventured, at first, on a slender foundation. [*Rob. Stat. Frauds*, p. 15. of *Advertisement; contra*, p. 126.] The only difference between these two cases is, that in the former the contract was for the sale of standing timber; in the latter, of standing grass. The question in each was the same, and the same as that in the principal case: for it is agreed to make no difference, if the chattel be annexed to the freehold, whether it be the growth of the soil, as grass and timber trees, or the product of skill and labour, as a corn-mill and a mansion-house. As the law, upon this point, has been so recently, and so authoritatively settled in *Great Britain*, it should not be expected that this court will be misled by the exploded error of Chief Justice *Treby*.

June, 1809.    It may be added, that if any of the several articles,
Bostwick    which were the subject matters of this agreement, are
v.
Leach.    comprehended by the words of the statute; the agree-
ment should have been in writing. For it is well settled,
that if part of an entire contract be within the statute,
it cannot be proved by parol. The case of *Chater* v.
*Beckett* is conclusive on this point. [7 *Term Rep.* 201.
*Sugden* 64. *Roberts on Frauds*, p. 111.]

It may be claimed, in the next place, that this agree-
ment is excepted from the operation of the statute, by
reason of a part execution. On this point, it is under-
stood, that the opinion of the judges at the circuit prin-
cipally turned.

[Smith, J. That circumstance is perfectly immaterial
here. Decisions upon questions of evidence, at the cir-
cuits, are necessarily made with so much haste, and so
little consideration, that they can hardly be viewed as
authorities in any case.]

It is not mentioned here, with a view to repel the au-
thority of the decision; but simply to explain the reason
why this point is dwelt on by us.

This general principle has been settled and applied in
cases of this nature, that statutes, made to prevent fraud,
should not be so construed as to encourage and protect
it. But this is the only ground on which parol agree-
ments performed, or in part performed, have been
holden to be saved from the operation of the statute.
A writer of much respectability does, indeed, seem to
recognise other exceptions. He seems to suppose, that
those cases are excepted, where the part performance is
such as to furnish evidence of the agreement; and this
on the broad principle, that such performance removes
the danger of perjury. But this doctrine is exploded

by the whole current of opinions and authorities of a later date. *Per* Lord *Alvanley*, in *Foster* v. *Hale*, 3 *Ves.* jun. 713.; *per Master of the Rolls*, in *Buckmaster* v. *Harrup*, 7 *Ves.* jun. 341. *Rob. on Stat. of Frauds*, p. 134. 138. And even the cases which this writer puts by way of illustration, do, by no means, authorize his conclusion. *Pow. on Cont.* 292, 393. 309.

From this principle, thus limited, it results, that courts will interfere to enforce a parol agreement, on the ground of part execution, in those cases only where some act is done in pursuance of such agreement, which is advantageous to the party claiming to rescind, or disadvantageous to the party performing. But it is to be noted, that in each case the act must be performed with the assent, express or implied, of the party, against whom a remedy is sought; otherwise, no fraud can be imputed to him, except such a fraud as every man may be supposed to practise, who denies his contract. But it is only the fraud, which seeks, by indirect means, to obtain the benefits of a promise, and yet denies its obligation, which the doctrine of part performance respects. If extended farther than this, the doctrine would, in effect, be equivalent to a repeal of the statute.

These distinctions, it is believed, are clearly traced, and well established, in the books.

Thus it is holden, that the payment of money is a sufficient part performance; but not if it be paid as earnest. It must be a part of the purchase-money; and, as Lord *Loughborough* once held, a *material part.* *Main* v. *Melburn*, 4 *Ves.* jun. It should be added, that this rule itself has recently been denied by Lord *Redesdale*. *Clinan* v. *Cooke*, 1 *Sch. & Lef.* 22.

So, a delivery and receiving of possession under a

parol agreement, is in many cases a sufficient part execution; but the bare act of holding over by the tenant has not, it seems, been so considered; [3 *Ves.* jun. **378.** *per Lord Chancellor*, in *Wills* v. *Stradling;*] nor has continuance in possession by lessee, in case of an agreement, by parol to take a lease for a term of years certain. [1 *Pow. on Cont.* 309.]

It is said, too, that acts merely preparatory or ancillary to a contract, are not a part performance within the rule. *Roberts*, 139, 140.

Acts of ownership exercised, improvements made, and expenses incurred, under an encouragement express or implied, are holden sufficient to take an agreement out of the statute; but not, it would seem, if these acts are done merely upon the faith of the agreement, and not in pursuance of any stipulation in it. *Roberts*, 134, 135.

These rules, with their qualifications, go to show the extent of the doctrine in view; and warrant the inference, that wherever the acts relied on as a part execution are done upon the bare faith of a parol agreement, the case comes within the statute.

In further illustration of this point, it may be remarked, that in all cases of such agreements, there may be a countermand and refusal, on either part, and performance afterwards, on the other, does not avail. 1 *Comyn on Cont.* 78, 79. This point was expressly determined in the case of *Crosby* v. *Wadsworth.*

The case of *Lamas* v. *Bayly*, 2 *Vern.* 627. goes the full length of establishing the proposition for which we contend. There the performance was without the assent of the party claiming to rescind; and the case was adjudged to be within the statute. It had this other

feature, in which it strongly resembles the case at bar, that the performance relied on was a mere act of forbearance. This case is recognised as sound law, by a late writer, of considerable reputation, who asserts it as a general rule, that " merely abstaining from doing an act" is not a sufficient part execution. *Newland on Cont.* 195, 196.

In the principal case, the facts connected with the point in debate are these : The agreement was to have been performed on the first day of *January* next after it was entered into. On that day, as the plaintiff avers, he stopped his mill; and, on the next day, gave notice to the defendant, who thereupon refused performance. According to a familiar rule of construction, this averment would be fully satisfied, if we should admit, that a mere point of time intervened between the cessation to use by the plaintiff, and the refusal by the defendant. Besides, it does not appear, that the forbearance to use, for any space of time, was a thing known, or assented to, by the defendant; but it does appear, that at the earliest period at which the law required his dissent to be expressed, he refused to ratify the contract. Prior to the notice and refusal, every act of performance must have been done on the faith of the agreement; after that, they must have been done not only without the defendant's assent, but with full notice of his dissent to their being done. A performance, under such circumstances, surely cannot be availing.

*Allen* was to have argued against the motion ; but, owing to a sudden indisposition, was not in court when the cause came on.

*Bacon* submitted a few remarks in support of these propositions :

1. That this action was founded upon a promise of the defendant to pay 400 dollars, made upon a sufficient and

unexceptionable consideration, *viz.* the plaintiff's stopping his mill. If this had been the only consideration, there could not have been a doubt in the case. Is the party less to be made liable on the same promise, because he was, in point of fact, compensated by other advantages, which the law will not take notice of.

2. That the articles, which the defendant contracted for, were not so annexed to the freehold, but that they might be sold separately as personal property. They were, indeed, contemplated by the parties as severed at the time of the contract. 1 Ld. *Raym.* 182. *Bull. N. P.* 282. *Poulter* v. *Killingbeck,* 1 *Bos. & Pull.* 398.

BY THE COURT. The contract was not embraced by the statute of frauds and perjuries. When there is a sale of property, which would pass by a deed of land, as such, without any other description, if it can be separated from the freehold, and by the contract is to be separated, such contract is not within the statute. Such are the contracts for the purchase of gravel, stones, timber trees, and the boards and brick of houses to be pulled down and carried away.

The agreement not to use his mill, after a certain day, is not within the statute of frauds and perjuries; for this statute contemplates only a transfer of lands, or some interest in them. In this case, there was no transfer of any right, but only an agreement not to exercise a right. He parts with no interest to any person. There is no conveyance of the stream, or indeed of any interest whatever. Thus, it differs nothing in principle from the case where a man has carried on a trade in his house, or shop, and agrees, for a valuable consideration, not to carry on his business at that particular stand : and yet such contract has never been held to be within the statute.

New trial not to be granted.