# Harris *v.* Powers.

*Trover for Conversion of Lumber, &c.*

| 57 | 139 |
|----|-----|
| 100 | 347 |

| 57 | 139 |
|----|-----|
| 113 | 219 |

| 57 | 139 |
|----|-----|
| 121 | 338 |
| 121 | 339 |

| 57 | 139 |
|----|-----|
| 131 | 135 |

1. *Practice; what, discouraged.*—The court can not countenance the practice pursued in this and other cases, of setting out *in extenso* the testimony of numerous witnesses, when no question as to the legality of the evidence is raised; no charge given or asked as to its weight, or error assigned, which renders it necessary that the court should know what any single witness testified, or more than the tendencies of the evidence.

2. *House; when becomes personal chattel.*—*Prima facie*, a house is a part of the freehold, and passes with the land; but where there is an agreement that the builder may remove it, the house becomes a chattel, a contract for the sale of which is not within the statute of frauds.

3. *Same; when trover lies for conversion of.*—When a house has thus become a chattel, trover lies for a conversion of the material of which it is built, and with it may be joined a count in case.

4. *Statute of frauds; what not within.*—There is no law requiring a representation or statement, as to the ownership of such a chattel, to be in writing, before the party making it will be bound thereby; nor need an act to constitute an *estoppel en pais*, with regard to such chattel, be in writing.

5. *Case; when lies.*—If one in possession of lands, on which another has erected buildings, in answer to an inquiry by one who announces that he wishes to purchase them, states that the builder has a right to sell them, and the purchaser buys on the faith of this statement, and attempts to remove them in a reasonable time, he may maintain an action on the case for damages against the party in possession, if he refuses to allow the removal to be made; and neither negligence nor malice in making the statement, need be averred or proved.

APPEAL from Circuit Court of Hale.

Tried before Hon. GEORGE H. CRAIG.

The appellant, Harris, brought this suit in the court below against Powers, the appellee. The original complaint con-

, tained three counts. The first two counts were in trover, for the conversion of about five thousand feet of plank and lumber. The third count averred, that on the —— day of ————, 1870, plaintiff contracted for and purchased three framed cabins from one Kennedy, which were then situate on premises occupied by defendant; that before the purchase plaintiff applied to defendant to know whether Kennedy had .a right to sell the lumber and cabins; that defendant assured plaintiff that he, Kennedy, had that right; that upon this :assurance plaintiff bought the cabins and lumber from Kennedy, paying him $50 therefor; "whereby it became the ·duty of defendant to permit plaintiff to have and receive said lumber, but defendant, though often requested, has failed and refused, and still fails and refuses, to permit said lumber to be delivered to plaintiff, to his damage," &c.

The defendant demurred for misjoinder of counts, and to ·the third count, "because no consideration is alleged for said promise;" because it failed to show that defendant intentionally and designedly misled plaintiff, in the statement that ·" Kennedy had a right to sell;" and also, because it failed to charge fraud and deceit in defendant's statement.

The court sustained the demurrer to the third count, and thereupon, by leave of court, plaintiff filed an amended count, which averred that the plaintiff purchased three framed cabins, on premises occupied by defendant, from one Kennedy, and before purchasing applied to defendant to know if Kennedy had the right to sell; that defendant assured plaintiff that Kennedy had the right to sell said cabins, containing about five thousand feet of lumber, and upon this assurance plaintiff purchased from Kennedy, and paid him $50 therefor; that after such purchase and payment, defendant unlawfully interfered with said lumber, and by means of such interference prevented plaintiff from having or using said lumber, whereby plaintiff was damaged ·three hundred dollars.

The cause was tried on the plea of the general issue, and resulted in a verdict and judgment for the defendant.

The testimony tends to show that prior to October, 1870, the appellee, Powers, was in possession of certain lands belonging to the "Johnston estate," which he had leased for a year, with the privilege of renewing his lease. Powers was engaged in planting, and while he was in possession of the plantation he allowed one Kennedy to erect thereon three wooden cabins, built of log and planks. One of these .buildings was used by Kennedy as a store, and the other .as

a "commissary house." Some time in October, 1870, Harris commenced negotiating with Kennedy for the purchase of the buildings, or the lumber therein; but before completing the trade, went to Powers and asked him if Kennedy had a right to sell them, stating that he would not buy if Powers objected. Powers replied, that Kennedy had that right, and stated, as some of the witnesses testified, that he "would be glad if Kennedy could sell them, as he had bought the lumber from defendant and paid him for it," and that plaintiff "could take his time about removing them." After this conversation, plaintiff bought the houses from Kennedy, paying him $50 therefor, and taking a written receipt or bill of sale.

The next summer, plaintiff sent his wagons after the lumber, but the houses had been taken down and the lumber removed. The defendant's testimony was to the effect that Kennedy had a right to sell only one of these cabins, known as the "commissary house," and that his conversation with plaintiff related solely to that; that the other two cabins belonged to the Johnston estate; that defendant agreed to give plaintiff a suitable time to remove the lumber of the one house, which he stated Kennedy had a right to sell. In the summer after the sale, when Harris' wagon came for the lumber, defendant "told the plaintiff's driver that he knew of no lumber belonging to plaintiff, as he, defendant, some ten months before, had ordered Harris to take himself, and all he had, away from the place." The testimony was conflicting, whether defendant used the lumber in all the houses; the weight of the evidence, however, tended to show that he did.

The foregoing synopsis of the evidence is all that is material to a proper understanding of the case. The plaintiff reserved exceptions to the giving of several charges, which need not be further noticed; and, among others, to the following: "Powers is not liable on the third count, as for an action on the case, on account of representations or assurances to Harris of Kennedy's right to sell said property, unless said representations or assurances were in writing, signed by Powers, the party to be charged."

The ruling upon demurrer, and the giving of the charge, are now assigned, among other things, for error.

JAMES E. WEBB, for appellant.—Whether the third count was trover or case, the court erred in sustaining the demurrer to it. The two actions may be joined. "Any illegal

assumption of ownership; any illegal using or misuser, or wrongful detention of a personal chattel, will amount to a conversion in trover."—7 Porter, 466; *Freeman v. Scurlock,* 27 Ala. 413; *Connor & Johnson v. Reynolds,* 33 Ala. 526. Whoever tortiously detains property from the owner is, in contemplation of law, guilty of a trespass. The houses erected by Kennedy, under the circumstances, did not become attached to the freehold—they were personal property, and could be sold.—*Foster v. Mabe,* 4 Ala. 402; 1 Hill, 176; *Ewles v. Man,* 3 East. 39. The third count was not intended as an action of deceit, or for the false representation, but for such interference with plaintiff's lumber as would fall short of a conversion which would support *trover.* Powers' statement that Kennedy had a right to sell, was a statement of a fact, and estops him from denying it now.

COLEMAN & SEAY, *contra.*—The third count, whether it be in case or assumpsit, does complain of non-feasance or neglect to perform a contract—there being manifestly no common law duty—and, therefore, it is not good either in case or assumpsit, without alleging some consideration for the supposed promise to permit plaintiff to remove the cabins. 1 Chit. Pl. 136; *Jelks v. McRae,* 25 Ala. 440; 8 Ala. 131; 12 Ala. 124. The other grounds of demurrer were also well taken. The count does not allege fraud or deceit, and "fraud without damage, or damage without fraud, gives no cause of action."—3 Bulst. 95. The charge with reference to recovery under the third count, is correct. That charge simply instructs the jury, that so far as the representations to plaintiff are concerned, they could not constitute a cause of action against defendant, unless in writing, &c.—R. C. § 1864. No relation of confidence or trust existed between Harris & Powers; Harris had equal means with Powers of ascertaining the facts he wished to know.—16 Ala. 785; 9 Ala. 662.

STONE, J.—We feel it our duty to refer to what we conceive to be the unnecessary volume of the record in this cause. Some sixteen witnesses were examined; not a question raised on the legality of the evidence; not a charge given or asked on its weight or effect; not an exception reserved, or error assigned, which renders it necessary that we should know what any witness testified, or more than the tendencies of the evidence; yet, the entire testimony given on both sides, filling twenty-two closely written folio pages, is embodied in the bill of exceptions, and brought to this

[Harris v. Powers.]

court, thus swelling the record to much more than double its proper dimensions. Such practice necessarily increases the costs of appeal, and consumes the time of the court in reading the record, for no conceivable profit to any one. We earnestly hope we will not find another record liable to the objections here pointed out.

It is due to counsel that we should say, this is by no means an exceptional case. Many records come before us containing much useless matter. Sometimes such redundant matter is inserted because the presiding judge requires it to be done. We know not at whose instance the present record was made so unnecessarily large, and we do not desire to inflict individual censure. Our remarks are leveled against an abuse which we would gladly reform.—See *Lincoln v. Claflin*, 7 Wal. 132.

Houses, as a general rule, are part of the freehold, and pass or descend with the land. The *prima facie* intendment is that they are part of the realty; and if there be no proof to take the case without the general rule, they are part and parcel of the land, and whoever owns the land owns the houses standing thereon.—*Harkness v. Sears*, 26 Ala. 473.

But this is not a conclusive presumption. It may be rebutted. In the case of *Foster v. Mabe*. 4 Ala. 402, Quarles had purchased from Alexander a lot in Eutaw, by oral contract. He entered upon the lot, and built a house upon it. Being unable to pay for the lot, Quarles made another parol agreement with Alexander, by which it was agreed that the possession of the lot should be restored to Alexander, and Quarles should have the house to do as he pleased with. The house was then levied on and sold by the sheriff as the property of Quarles, and Mabe became the purchaser. After the lien of the execution had attached, under which Mabe purchased, Quarles sold the house to Foster, who removed the lumber of which it was built, and appropriated it to his own use. Mabe then brought his action of detinue against Foster for the recovery of the lumber. The court charged the jury "that if there was an agreement between Quarles and Alexander that Quarles was to have the house and dispose of it as his own, this was a severance which made the house a chattel of Quarles', and it was liable to be levied on and sold under the execution against him." There was an exception reserved to this charge, and the case was brought to this court. The judgment of the Circuit Court was affirmed. This court, among other things, said: "In the case before us, it is not expressly stated that Quarles was to

remove the house immediately after the purchase, (for such: we consider it), from Alexander; but the inference is war-- ranted that a removal within a convenient time was contem- plated by both parties. The moment that Alexander· consented that Quarles should do as he pleased with it, the house became a personal chattel, and was consequently subject to levy and sale as the property of Quarles, under the execution." The court also ruled, that inasmuch as the house was but a chattel, its sale did not fall within the statute of frauds, which requires contracts for the sale of lands to be in writing. The court quoted approvingly *Bostwick v. Leach*, 3 Day, 476, in which it is said: " When there is a sale of property which would pass by a deed of land as such, without any other description, if it can be separated from the freehold, and by the contract is to be so separated, such contract is not within the statute."—See *Holmes v. Tremper*, 20 Johns. 29; 1 Washb. Real Prop. 5.

For the conversion of the lumber or material of a house, which has become a chattel under the rules above declared,. the action of trover will lie.—*Smith v. Benson*, 3 Hill,. N. Y. 176; *Carpenter v. Lewis*, 6 Ala. 682.

The Circuit Court gave the following charge, to which plaintiff excepted:

" Powers is not liable on the third count, or for an action on the case, on account of representations or assurances to· Harris of Kennedy's right to sell said property, unless said representations or assurances were in writing, signed by Powers, the party to be charged."

We know no rule of law which requires such representa-- tion to be in writing. We have shown above that a contract,. such as was made in this case, is not required to be in writing. An act, to constitute an estoppel *in pais*, need not be in writing. The Circuit Court erred in giving this. charge. The other charges given are free from error.

Counts in trover and in case may be joined in one action. *Dixon v. Barclay*, 22 Ala. 370; *Wilkinson v. Mosely*, 30 Ala. 562.

We think if Powers, while in possession and control of the *locus in quo*, on being appealed to by Harris, who was negotiating with Kennedy for the purchase of the lumber in the house or houses, informed Harris that Kennedy had the right to sell the lumber, or house or houses, and relying on such representation, Harris purchased the house or houses, and paid his money; and on making the attempt, within a reasonable time thereafter, to remove the lumber, Harris was··

[Leach, Harrison & Forwood v. Bush et al.]

denied the privilege of doing so by Powers; then an action or count in case will lie at the suit of Harris against Powers for such breach of duty; and in such case, an averment of negligence would be out of place and unnecessary; and to maintain the action, malice need not be averred or proved. Hilliard on Rem. 225; 1 Chit. Pl. 135; *Mast v. Goodson,* 3 Wils. 348.

Reversed and remanded.