# Wheeler v. The State.

*Prosecution for Unlawfully Breaking a Fence.*

1. *Hearing Evidence.*—A boundary line between adjacent land-owners was run by two men selected by the owners.  On the trial of one of the owners on the charge of unlawfully breaking down a fence placed on the line by the other owner, one of the two men who were selected to run the line testified that, when he began to run it, neither the defendant nor the other man selected were present, and that he began at a stake pointed out by one W., a brother of the defendant, as marking the dividing line between the lands of W. and another.    *Held,* that the declaration of W., in the absence of the defendant, was mere hearsay, and inadmissible.

2. *Failure to object, as evidence of acquiescence; question for the jury.*— Whether one who stood by and saw a surveyor run a line between his land and the land of another, without making objection, thereby acquiesced in the line as run, is a question for the jury.

3. *Maliciously or negligently breaking or destroying fences,; construction of statute.*—The statute (Code, § 3888) providing for the conviction and punishment of "any person who unlawfully, maliciously, or negligently destroys, throws down, or breaks any fence or inclosnre of another, and fails immediately to rebuild or repair the same," has reference to fences or inclosures in which the defendant is without property or right; and where, in ignorance of the true boundary line, one erects a fence on the land of another, it becomes the property of the owner of the land, and its destruction or removal by him is not within the statute.

4. *Construction of agreement between land owners as to running of division line.*—Where an agreement between landowners as to the running of a division line provides that the person selected, having run the line from one of its terminal points to the other, should run and retrace it to the beginning point, the retracing is an essential part of the agreement, which could not be dispensed with, without the assent of the landowners.

APPEAL from the Criminal Court of Pike.

Tried before the Hon. WM. H. PARKS.

The appellant, L. C. Wheeler, was convicted on the charge that he "did unlawfully, maliciously or negligently break a fence, the property of D. Boutwell, against the peace and dignity of the State of Alabama."

On the trial, as shown by the bill of exceptions, Dixon Boutwell, the prosecutor, testified that, before the prosecution was instituted, the defendant knocked down with his ax a fence, which was the property of the witness and was on land owned by the witness. It was shown by the witness that the prosecutor and the defendant owned adjacent lands. The prosecutor further testified that he and defendant agreed that each should select a man, and have the line between them run and staked out; that, under this agreement, one Lassiter and one Bundy were selected; that they ran the line, and the prosecutor built his fence upon it. Said Bundy, being introduced as a witness, testified that he ran the line between the prosecutor and the defendant, and that when he commenced to run and stake out the line, neither the defendant nor said Lassiter were present; that he began at a stake pointed out by Sam Wheeler, a brother of defendant, on the dividing line of Sam Wheeler and another party. The defendant objected to this testimony, and moved to exclude the statement of the witness as to what Sam Wheeler said about the line, on the ground that the defendant was not present, and the evidence was not competent. The court overruled this objection, refused to exclude the testimony, and to this ruling the defendant duly excepted. There was evidence that the defendant subsequently employed one Adams to run the line, as stated in the opinion, and that, according to the line as run by said Adams, a part of the fence which the prosecutor had built was on the defendant's land. There was evidence for the defendant tending to show that, after the line was run by Lassiter and Bundy, the defendant requested them to retrace the line, and see that the stakes were properly placed, but that they declined to do so. Other material facts are stated in the opinion. In submitting the case to the jury, the court, in its oral charge, among other things, instructed them as follows: (1) "If the jury believe that Adams surveyed this line for the purpose of straightening the

line, and moved it so that the fence  *  *  *  broken down, if so broken, was on defendant's land, that did not make Boutwell lose ownership of the fence, if it originally belonged to him, and the defendant would not be authorized to break down the fence in the manner testified to by the State witness." (2) "If the men who ran out the line under an agreement, if this was done, looked back, and could see from one end of the entire line to the other, and if it was staked, and if they could see, by the stakes, that the line they had staked was straight; if the jury believe that this was a substantial compliance with the contract, to retrace or rerun the line, from the other end,—then it would not be neceesary to actually retrace or run back, although the jury may believe that it was agreed to retrace or run the line back." (3) "If the jury believe, from the evidence, that Boutwell stood by and saw Adams make the survey, without saying anything, that does not make him agree to the line." The defendant separately excepted to each of these portions of the court's general charge to the jury.

WORTHY, FOSTER & CARROLL, for appellant, cited 14 Am. & Eng. Encyc. of Law, 8, note; *Johnson v. State*, 61 Ala. 6.

WM. C. FITTS. Attorney-General, for the State, cited *Brazelton v. The State*, 66 Ala. 97; *Hill v. The State*, 16 So. Rep. 115.

BRICKELL, C. J.—The declaration of Sam Wheeler as to the location of a stake on a boundary line between his lands and the lands of another person, made in the absence of the defendant, if the fact was relevant, was mere hearsay, and inadmissible.

The presence of the prosecutor, when Adams, a surveyor, ran the line separating his lands from the lands of the defendant, for the known purpose of ascertaining the true line, and whether any part of the fence, the matter of controversy, was on the lands of the defendant, are undisputed facts. If it be not true, as some of the evidence indicates, that the prosecutor expressed his assent to and approval of the line, his silence is a fact indicative of his acquiescence, the significance or force of

which is matter for the consideration of the jury. "The silence of one against whom a charge is preferred, or against whom a claim is made, may be received in evidence as an admission that the charge is true, or that the claim is just."—1 Brick. Dig. 835, §§ 439–40; 1 Green. Ev. § 197. The instruction to the jury, that if the prosecutor stood by and saw the line run, without making objection, that did not make him agree to the line, was invasive of the province of the jury. Whether his silence was indicative of acquiescence, or of assent to the line, was for the consideration and determination of the jury. If, from the silence, they inferred acquiescence, submission to, and approval of the line, then his failure to object did "make him agree to it."

The statute under which the prosecution is instituted has no reference to partition fences, as they are defined and regulated by the statute, in which there is joint or common property by adjoining proprietors. Code, §§ 1364–75. It has reference to fences or inclosures which are the property of the prosecutor, and in which the defendant is without property or right. *Hill v. State*, 104 Ala. 64. The statute reads: "Any person, who unlawfully, maliciously, or negligently destroys, throws down, or breaks any fence or inclosure of another, and fails immediately to rebuild or repair the same, must, on conviction, be fined not less than twenty, nor more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months; and the fine goes to the injured party." Cr. Code, § 3888. A fence, whether there be a permanent annexation to the soil, or if it be of rails so arranged as to constitute an inclosure, is a fixture, a part of the land and passing with the freehold. *Mitchell v. Billingsley*, 17 Ala. 391; *Smith v. Carroll*, 4 Iowa, 146; *Seymour v. Watson*, 5 Black. 555. The purpose of the statute is the protection of the owner of the soil, or of tenants or others having possession under him, against trespasses, which prior to the statute were redressed only by a civil action for the recovery of damages. The destruction of a fence by its owner, or the failure to rebuild or repair it, is not within the purview of the statute. The pivotal inquiry in the present case was, whether the fence was on the lands of the prosecutor or of the defendant. If on the lands of the defend-

ant, there could not, in any event, be a conviction. If it was erected by the prosecutor, in ignorance of the true line, the erection was at his own peril, and he was not entitled to remove it, when the true line was ascertained. The rule is ancient, "that whatever is affixed to the soil becomes, in contemplation of law, a part of it, and is consequently subjected to the same rights of property as the soil itself." Broom's Legal Maxims, 401. There are relaxations and modifications of the rule, as between landlord and tenant, and when the owner of the freehold and the person annexing the fixtures, or making improvements, stand in some other relation, which are without application in this case. There was error, therefore, in the first instruction the court gave to the jury. If the fence, as the instruction hypothesizes, was on the land of the defendant, the prosecutor had no ownership of it to lose; and the defendant had the unqualified right to remove or destroy it.

The second instruction is also erroneous. If, as the instruction predicates, the agreement between the defendant and the prosecutor was, that Lassiter and Bundy, having run the line from one of its terminal points to the other, should run and retrace it to the beginning point, there could not be substantial compliance with the agreement without the retracing, unless the parties dispensed with it by their assent, express or implied. The line may have been straight, but the retracing of it was as essential a part of the agreement as the first tracing or running.

The words of the statute are of plain, unambiguous meaning. The destruction or injury to the fence or inclosure must have been either malicious, or unlawful, or negligent. The word *maliciously* involves no more than wantonness, or a willful disregard of right and duty. It does not necessarily import ill will, or a grudge against the owner, or a desire to be revenged upon him. Such malice, if the cause of the unlawful act, would aggravate the offense, but is not a necessary constituent of it. *Unlawful*, that the act was not done by authority of law; or that it was an act the law prohibits; it is the converse of *lawful*. A malicious act is doubtless an unlawful act; but an unlawful act may be without the wantonness, or willful, intentional disregard of right and duty, the characteristic of a malicious act. It may be

done in mistake or error of law, or as to the right of the party doing it. *Negligently* is of its usual significance,— it imports that the injury to the fence or inclosure was the result of a failure to do what a person of reasonable prudence would ordinarily have done under the attending circumstances, when the injury occurred. These we deem the proper signification of the words of the statute, especially in view of the fact that the statute relieves the act of all criminality if the wrongdoer immediately rebuild or repair the fence or inclosure.

It is not necessary to pass separately on the several instructions requested, to the refusal of which exceptions were reserved. What we have said, in connection with the exposition of the statute in *Hill v. State, supra,* will be a sufficient guidance for the court below on another trial.

The judgment is reversed, and the cause remanded. The defendant will remain in custody until discharged by due course of law.