261 So.2d 389

**Nathan GROVES et al.**

v.

**D. W. SEGARS et al.**

**6 Div. 912.**

Supreme Court of Alabama.

April 20, 1972.

Graydon L. Newman, Jr., Birmingham, for appellants.

Norman K. Brown, Bessemer, for appellees George W. Smith, Jr., Dorothy A. Smith and George Gerald Smith.

Frank Marsh, Bessemer, for appellees D. W. Segars, individually and D. W. Segars d/b/a Sebro Realty Company, Sebro Realtors, B–S Developers, Inc., a Corporation.

McCALL, Justice.

At the conclusion of the evidence, offered ore tenus in open court before the trial judge, this cause was submitted for a final decree. Thereafter, the court found the issues in favor of the respondents, George W. Smith, Jr. and Dorothy A. Smith, and entered a decree to that effect. The complainants, Nathan Groves and Velma I: Groves, have appealed.

The pertinent facts in this equity case are that the appellees, George W. Smith, Jr. and his wife, Dorothy A. Smith, were sued for taking down and carrying away a chain link fence that surrounded their residence which was purchased by the appellants, Nathan Groves and Velma I. Groves. The dispute is over who owned the fence when the Smiths removed it. The Smiths held possession of the real property on which the fence was located under a lease sale contract which they had made with Bessemer Coal, Iron and Land Company in 1954. Under this contract the latter agreed that, after the Smiths had completed payment of certain stated installments of money and had conformed to other contractual provisions, it, as lessor, would convey the property to the Smiths. During the Smiths' occupancy of the premises under the lease sale contract, they had the chain link fence erected about the property, and they cross-fenced within, an area for a dog pen. Subsequently, the appellees decided to move to a new home at a different location in Bessemer. Preliminary to moving, the Smiths agreed with D. W. Segars, another

respondent, to transfer and assign to B–S Developers, Inc., also a respondent, their lease sale contract with the Bessemer Company and to convey to B–S Developers, Inc. all their interest in the present house and lot about which the fence was erected. In consideration for this, the respondent, D. W. Segars, credited the Smiths with the sum of $7,650 to apply against the purchase price of the new house that Segars agreed to build, or have built, for them on another lot.

The Bessemer Coal, Iron and Land Company, as the Smiths' lessor, approved this conveyance in consideration of B–S Developers, Inc. assuming all the terms and conditions of the lease sale contract, including an agreement to pay all sums of money due thereunder or to become due.

Under their agreement with the respondent Segars, the Smiths were to continue occupancy of their said residence which was located at 2460 21st Street, Hueytown, Alabama, until completion of their new home, and to pay D. W. Segars the same amount they had been paying monthly to Bessemer Coal, Iron and Land Company on the lease sale contract until the new house was completed. It was while they were so occupying their residence that they dismantled and removed the fence in question, and, it was also during this period of occupancy that the respondent B–S Developers, Inc. sold that house and lot to the appellants Groves. The activities which are mentioned occurred within a period of approximately twelve months.

The Smiths contend that they reserved the right to remove the fence before closing their negotiations with the respondents Segars and B–S Developers, Inc. on May 16, 1969; and, further, that they notified the Groveses that the chain link fence did not go with the house and lot at the time when they were inspecting the premises with Segars' realtor. The Groveses and the other co-respondents denied this and contend that no reservation of the fence was made known to them prior to the re-

spondent B–S Developers, Inc. conveying to them on June 2, 1969. After hearing the evidence, the trial judge resolved the issues in favor of the appellees, and held that the fence was their property and that they had a right to remove it.

Since the appellants admit in their brief that there is disputed testimony on this issue of whether the fence was reserved or not, it is evident that the trial court had before it some evidence to support the appellees' contention that they orally reserved the fence for themselves. The sufficiency of the evidence to support the final decree in favor of the Smiths will not be considered though, because the appellants have not complied with Supreme Court Rule 9(b), Appendix to Tit. 7, Code of Alabama, 1940. The relevant part of that rule provides:

> " * * * and if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, then the statement [Statement of Facts] shall contain a condensed recital of the evidence given by each witness in narrative form bearing on the points in issue so as to fully present the substance of the testimony of the witness clearly and concisely; * * * "

When there is no compliance with this rule, we apply the presumption that the record contains evidence to sustain every finding of fact. Hartford Accident & Indemnity Co. v. Kuykendall, Ala., 247 So.2d 356; Kinsaul v. Florala Telephone Co., 285 Ala. 16, 228 So.2d 777; Evergreen Heading Co. v. Skipper, 276 Ala. 623, 165 So.2d 705; Nixon v. Richardson, 281 Ala. 632, 206 So.2d 877. We presume, therefore, that there was sufficient and credible evidence that the Smiths orally reserved the fence for themselves.

The appellants insist that the trial court erred in its decree. Their position is that, as a matter of law, the fence, being a fixture and forming a part of the real property, passed to the appellants, because the Smiths did not sever the fence from the

realty by a proper contract of sale, so as to thereby convert it into personal property. They argue that such a contract must be in writing and be executed with the same formality as a conveyance of the realty.

■ Ordinarily a fence composes a part of the land on which it is located and passes to the vendee of the land. In Mitchell v. Billingsley, 17 Ala. 391, 393, the court succinctly said:

"* * * It was never heard of that in selling a farm in a state of cultivation, the vendor should insert in the deed a stipulation that the fences enclosing the fields should pass. As to the fruit trees growing in the orchard, they are actual fixtures, the rails on the fence constructive, but both alike pass to the purchaser. * * *"

And in Wheeler v. State, 109 Ala. 56, 59, 19 So. 993, 994, we find this statement of law in the court's opinion:

"* * * A fence, whether there be a permanent annexation to the soil, or if it be of rails so arranged as to constitute an inclosure, is a fixture,—a part of the land, and passing with the freehold. Mitchell v. Billingsley, 17 Ala. 391; Smith v. Carroll, 4 G. Greene, 146; Seymour v. Watson, 5 Blackf. 555. * * *"

■ But, there was evidence in the instant case that went further than evidence of a conveyance of land upon which a fence had been erected. This was evidence not only that the Smiths reserved the fence for themselves, but also that they made known their reservations of it to D. W. Segars before their conveyance to his nominee, B–S Developers, Inc.; and also evidence that they gave notice to that firm's realtor, Gloria Andrews, and to the appellants, grantees of B–S Developers, Inc., before their purchase from that corporation, that the fence did not go with the house and lot. The court resolved the disputes in favor of the appellees, so the question is whether, under the facts presented, the appellees could orally reserve the fence from their subsequent conveyance of the realty.

In the case of Foster v. Mabe, 4 Ala. 402, one Alexander made a parol agreement to sell a lot to one Quarles. Quarles entered into possession and built a house on the lot. Finding himself unable to pay for the lot, Quarles orally agreed with Alexander that he should retake the lot, but that Quarles should have the house to do as he pleased with. The court said:

"* * * We must then consider whether their [Alexander and Quarles] action in this respect has the effect to determine the character of the house as real or personal estate. * * *

* * * * * *

"The sale by a landlord to his tenant of fixtures attached to the estate, and vice versa, has never been considered as within the statute. [Statute of Frauds] Hallen v. Render, 3 Tyr. 959, cited Gibbon on Fixtures, 48. And it is evident that these decisions could never have been regarded as correct in principle upon any other ground than that the fixtures, by agreement of the parties, were treated as chattels, with a view to an ultimate severance from the freehold. * * *

* * * * * *

"* * * The moment that Alexander consented that Quarles should do as he pleased with it, the house became a personal chattel, and was consequently subject to levy and sale as the property of Quarles, under the execution of Hines."

In Foster v. Mabe, supra, at p. 406, the court quoted approvingly Bostwick v. Leach, 3 Day, 476, in which it is said:

"* * * 'when there is a sale of property which would pass by a deed of land as such, without any other description, if it can be separated from the freehold, and by the contract is to be so separated, such contract is not within the statute.'"

In Harris v. Powers, 57 Ala. 139, the defendant, Powers was in possession and control of the real property, belonging to the "Johnston estate," which he had leased for a year with the privilege of renewing his lease. On being appealed to by the plaintiff

Harris, who was negotiating with one Kennedy for the purchases of some houses on the premises, Powers told Harris that Kennedy had the right to sell the houses. Relying on these representations, Harris purchased them from Kennedy. The defendant, Powers, later denied Harris the right to remove the houses. The court held that the prima facie intendment is that houses are a part of the realty and pass or descend with the land, and whoever owns the land owns the houses standing thereon. "But this is not a conclusive presumption. It may be rebutted." And, the court said that there may be a parol agreement to permit removal of the houses which would take them without the general rule and constitute the house chattels. The court held:

"We know no rule of law which requires such representation to be in writing. We have shown above that a contract, such as was made in this case, is not required to be in writing. * * *" Harris v. Powers, supra, at p. 144.

Harris was upheld in his action to recover in trover for the conversion of the lumber in the houses, which were said to have become chattels under the agreement allowing him to remove them, and, also, that an action or count in case would lie against Powers for his breach of duty to Harris in refusing to permit him to remove the houses.

These cases were followed by Broaddus v. Smith, 121 Ala. 335, 26 So. 34. In that case, the property owner Reeder mortgaged to one Wheelock. The mortgagor used the proceeds of the mortgage loan to complete a bank building, on the mortgaged premises for his lessee, Alabama Banking & Trust Company. By oral agreement between Reeder and Alabama Banking, the latter furnished the bank vault doors and frames which were put in the building, with Alabama Banking retaining the ownership and right to remove them at the termination of the lease. The vault and doors and frames were so constructed that to remove the doors and frames required the destruction of the vault and the making of a hole in the

floor of the building. Reeder transferred to one Perry rent notes given him by Alabama Banking. On default in payment, Perry obtained a judgment against Alabama Banking and levied on the "vault doors, frames and partition." The plaintiff in the case became the purchaser at the execution sale. After the mortgagor's default, Wheelock foreclosed the mortgage and took possession of the premises. Some five years later, Wheelock, the former mortgagee, sold the entire vault to the Merchants Bank which removed it from the building.

In the plaintiff's action against Broaddus. and the Merchants Bank for the conversion of the doors and frames, the court gave judgment for the plaintiff. The court held that the vault doors and partition remained personal property by virtue of the agreement between Reeder and Alabama Banking and were subject to levy and sale. The court said:

"* * * This contract was oral, but, being made with reference to personal property, was not offensive to the statute of frauds. Harris v. Powers, 57 Ala. 139; Foster v. Mabe, 4 Ala. 402.

"By express contract between the parties, the nature and status of the chattel as personal property was preserved and retained. That it was competent for the parties to contract to this end, we think there can be no doubt. * * *" Broaddus v. Smith, supra, at p. 338, 26. So. at p. 35.

The fact that the agreement, that the doors and partition should remain the Banking Company's property with the right of removal at the lease's termination, was made prior to their installation does not seem to alter the situation, because the same results were reached in Foster v. Mabe, supra, and Harris v. Powers, supra, cited as authority for Broaddus v. Smith, supra, in which cases the agreement for the removal of the structures, existing on the land, was not arrived at until their building and installation had been completed.

The end result, as we see it, under the authorities cited above, is that one, holding the possession and the equitable title to land, can, by parol agreement with his vendee, reserve, in advance of executing a conveyance, fixtures existing on the subject land, thereby constituting them chattels with the right to remove them from the premises. Such personal property does not pass with a subsequent conveyance by deed of the property.

The trial court having resolved the issue of the existence of a parol agreement to remove the chain link fence in favor of the Smiths, we conclude that the trial judge correctly applied the law that a fixture could be reserved, or the right to remove it may be obtained, by an oral agreement between the owner of the equitable title and his vendee.

The appellants' other assignments of error were not argued and therefore are waived. Supreme Court Rule 9(b), Appendix to Tit. 7, Code of Alabama, 1940.

Affirmed.

HEFLIN, C. J., and COLEMAN, HARWOOD and BLOODWORTH, JJ., concur.