BOWEN W. SIMMONS, Retired Circuit Judge.
Appellants were indicted separately for grand larceny, and tried jointly by agreement with separate verdicts. The appeals are consolidated by agreement. Each defendant was sentenced by the court to five years imprisonment.
The subject of the larceny was seven rolls of copper wire with an alleged value of $55.00. The wire was alleged in the indictment to be the personal property of Southern Pine Electric Cooperative, a corporation. The allegation of ownership is supported by the evidence. The evidence of theft by the two appellants was largely circumstantial, but an issue of wrongful appropriation was presented to the jury.
We do not think a delineation of the evidence pointing to appellant’s guilt is necessary; but suffice it to say it was sufficient to establish the unlawful asportation and appropriation of the wire.
We do not mean to say that defendants were guilty of an offense alleged in the indictments, for the reason we have concluded that the property, the subject of the indictments, was real property which was not the subject of larceny. Adams v. State, 159 Ala. 115, 48 So. 795.
We paraphrase a statement by Chief Justice Stone in Langston v. State, 96 Ala. 44, 11 So. 334. If the prosecution had been under § 3875, Code of Alabama 1886 (now T. 14, § 432, Code of Alabama 1940) different rules would probably prevail. We quote T. 14, § 432, which is substantially the same as § 3875, Code of Alabama 1886, and reads:
“Any person who wilfully commits any trespass on the lands of another by cutting down, destroying, or mutilating or carrying off any timber or rails, of the value of less than twenty-five dollars, with intent to convert same to his own use, or by severing from the freehold any products thereof, or any property or thing thereto attached, or by tearing down, mutilating or destroying any building, structure or fixture of any character or kind thereon, or by destroying or injuring any outstanding crops thereon, or by plowing up seed that have been planted thereon, shall, on conviction, be fined not more than two hundred dollars, and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months; and so much of the fine as is sufficient to compensate the owner of the property shall go to the injured party, said amount to be determined by the court at the time of the trial.”
*1388 Our review of authorities reveals that it is often difficult to draw distinctions between real and personal property, and each case must be determined on its own. There are, however, basic criteria that may be followed in determining the character of the property.
First, it appears that the copper wire was attached to some vertical poles with ends embedded in the ground several feet. These poles, and wires attached to the poles, were permanent in their construction and use, and were not constructed for temporary purposes.
The evidence points to the unlawful conduct of the defendants, or one of them, in detaching the wire from the poles, and the removal of the same that soon followed. There was insufficient intervening time to convert the wires into personal property; in other words, the severance of the wires and their removal was one continuous act and not separate acts. McQueen v. State, 10 Ala.App. 244, 65 So. 310; Fuller v. State, 34 Ala.App. 211, 39 So.2d 24.
Chief Justice Stone, in Langston, supra, enumerates certain basic principles of law governing the conversion of personal property into realty. We quote as follows:
“The question presented for our consideration is whether the articles alleged to have been stolen had, on account of their annexation to the freehold, lost their character as personal property, and become a part of the realty, in such sort as not to be subjects of larceny. The subject of fixtures is one of great difficulty, and has evoked much discussion and a great contrariety of opinion. When doubt arises as to whether or not a certain piece of property is a fixture, this doubt must be decided by the circumstances of each individual case, as they may be influenced by certain cardinal rules which have now become criteria for the decision of the question. If the article in question meets the requirements of these rules, its character as a fixture is determined. These rules, as gathered from the adjudicated cases, have been succinctly stated as follows: (1) Actual annexation to the realty or to something appurtenant thereto; (2) appropriateness to the use or purposes of that part of the realty with which it is connected; (3) the intention of the party making the annexation of making permanent attachment to the freehold. This intention of the party making the annexation is inferred (a) from the nature of the article annexed; (b) the relation of the party making the annexation; (c) the structure and mode of annexation; (d) the purposes and uses for which the annexation has been made. According to these rulings, we do not consider that the pump and boiler put upon the plantation of Mr. Scott lost their character as chattels, and therefore we hold that the felonious taking and carrying away of said pump, or any part thereof, was larceny. We recognize the fact that the intention of the person making the annexation is the controlling factor in determining the character of the article annexed. If the testimony of Mr. Scott had simply been that he ‘intended the said boiler and pump to be a permanent improvement on said plantation,' without further qualification, and the said boiler had been made stationary, we are not prepared to say it would not have been a fixture. If believed, the testimony ‘that said boiler and pump could be moved, and had been moved up and down the river so as to more conveniently pump water,’ takes away the immobility, which of necessity must be an element of the permanency of the improvement. It is not essential to a fixture that its annexation to the freehold be made absolutely permanent by means of foundations laid or dug, or through the fastenings of cement or iron. As was said by Clopton, J., in Tillman v. De Lacy, 80 Ala. 103: ‘The permanence of the attachment does not depend on the strength or force or manner of the annexation to the freehold, so much as upon its constancy, and upon the uses to which the attachment chattel is adapted, the purposes for which designed, and the intention of the party in attaching it.’ There can be no such permanent *1389 annexation of the chattel to realty as will merge its character of personal property into realty, unless that annexation is intended to be stationary. The boiler and engine involved in this case are no more fixtures than would be a threshing machine, which can be moved from one part of the plantation to another as necessity or convenience demands. Nor does the said engine and boiler possess more of the elements of a fixture than a gin, and it has been expressly held by this court that a gin is not a fixture. Gresham v. Taylor, 51 Ala. 505; Hancock v. Jordan, 7 Ala. 448.
“We entertain no doubt that the valves taken from the pipes of the Montgomery Furnace & Chemical Company were fixtures. They meet the requirements of the rules as laid down above in every particular as being a part of the machinery for the accomplishment of those purposes. According to the testimony in this case, the pipes attached to this machinery are fixtures, beyond all cavil, and the valves alleged to have been stolen, being necessary parts of such pipes, partake of the same character. A long line of decisions sustain this view. Insurance Co. v. Allen, 80 Ala. 571, 1 So. 202; Tillman v. De Lacy, 80 Ala. 103; Quinby v. Paper Co., 24 N.J.Eq. 260; Langdon v. Buchanan, 62 N.H. 657; Gray v. Holdship, 17 Serg. & R. 413; Washb. Real Prop. p. 22; 8 Amer. & Eng.Enc.Law, p. 43. The court erred in its charge to the jury, and in refusing to give the second and fourth charges requested by the defendant. The indictment in this case was for larceny. If the prosecution had been under section 3875 of the Code of 1886, different rules would probably prevail. Reversed and remanded.” (Italics added.)
The Supreme Court of Alabama, in a gross receipts corporation tax case, observed in Wood Preserving Corporation v. State Tax Commission, 235 Ala. 438,179 So. 254, 256, as follows:
“We are of the opinion, and hold, in line with the great weight of current authority, that cross and switch ties, piling, bridge timbers, telephone and telegraph poles and cross-arms, when annexed to the soil, for the purposes for which suited, and for which they were manufactured and sold, become fixtures and a part of the freehold. Jones v. New Orleans & Selma R. Co. and Immigration Ass’n, 70 Ala. 227; Van Keuren v. Central R. Co. of New Jersey, 38 N.J.L. 165; Tonkawa Petroleum Corp. v. Golden Rule Refining Co., 159 Okl. 3, 11 P.2d 140; City of New Haven v. Fair Haven & W. R. Co., 38 Conn. 422, 9 Am.Rep. 399; Missouri P. Ry. Co. v. Bradbury, 106 Mo. App. 450, 79 S.W. 966; Union Pac. R. Co. v. Board of Commissioners, 114 Kan. 156, 217 P. 315; American Union Tel. Co. v. Middleton, 80 N.Y. 408; Streator Ind. Tel. & Tel. Co. v. Interstate Ind. Tel. & Tel. Co., 142 Ill.App. 183, 185; Western Union Tel. Co. v. Tennessee, 9 Baxt., Tenn., 509, 40 Am.Rep. 99.”
See also Groves v. Segars, 288 Ala. 376, 261 So.2d 389, relative to fences annexed to real estate.
We do not think there is any merit in appellee’s contention, that the indictments come within a provision of T. 14, § 331, Code of Alabama 1940, 1973 Cum.Supp. to Vol. Five, which we quote:
“ * * * and any person who knowingly, wilfully and without the consent of the owner thereof, enters into any dwelling house, store house, warehouse or other building or structure and cuts, breaks, tears out, removes any plumbing fixtures, lead pipe, copper lock, grate, mantel, light, fixture or other material which has been attached to and is a part of such building, * *
We fail to see how light poles, cross-arms, and electric transmission wires annexed thereto, as here, all on open land, can be termed a building, dwelling house, or structure which a person may enter “into.” Criminal statutes are to be strictly construed, and not be stretched to make such electric transmission installations a building into which one may enter.
We think it is common knowledge of which this court will take judicial notice *1390 that the rural electric lines for the distribution of electricity, as here involved, are so annexed to the real estate as to be permanent in character to provide electric service to rural areas for all residents indefinitely. They are not temporary.
While the cutting of the wires and their immediate asportation might have been trespass, we do not think it was larceny. Legislative action to make it larceny might be advisable, but we fail to find any such legislation.
At the conclusion of the State’s testimony, the defendant’s motion to exclude the evidence (R. 182) was overruled (R. 195).
In the light of the evidence adduced by the State, we hold that no issue for the jury existed. The appropriated wire was so annexed to the poles that it was a part of the freehold and not the subject of larceny as alleged in the indictments.
The judgments against both appellants are reversed and the causes are remanded.
We pretermit discussing the refused charges. The refusal of the motion to exclude is sufficient error to reverse and remand.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
TYSON, P. J., and BOOKOUT and BOWEN, JJ., concur.
DeCARLO, J., dissents with opinion.
HARRIS, J., joins in dissent.