ON DENIAL OF REHEARING
MADDOX, Justice
(dissenting).
I would grant rehearing to prevent a gross miscarriage of justice.
The property owners state in their brief in opposition to the application for rehearing, in part, as follows:
“The minority opinion stressed the fact that appraisers on both sides stated that an investor in real estate ought to receive a return of ten per cent (10%) on his investment. Both of the real estate appraisers for the Appellee stated, however, that regardless of the amount of the award, in their judgment the County overpaid for the property. Nevertheless, it is common knowledge that a parcel of property, particularly if it is vacant, may be worth a million dollars and at the same time have a nominal rental value because of the lack of improvements. In any event, the Lessee is not entitled to the same measure of damages as the fee owner. The Lessee owns a commodity, namely, a leasehold. The valuation of a leasehold is measured by the reasonable market value of the rent that it produces irrespective of the value of the fee.
“ ‘The term “rental value”, as applied to realty, is but another form of saying the value of the use, and means simply the value of the use of the land’. White Roofing Company v. Wheeler, [39 Ala.App. 662] 106 So.2d 658 (1957).
If his leasehold has not increased in value he is not entitled to anything. He cannot recover for personal property, permanent improvements, nor for loss of business. White Roofing Company v. Wheeler, supra.
“The ten percent (10%) factor used by the witnesses on both sides and also by the Court was merely an interest factor to commute to its present value the total amount of the increase in the rental value over the contract rental for the entire term of the lease including the option periods.”
* * * * * *
“Under the terms of the lease Shell was not entitled to be reimbursed out of the award for the improvements. Paragraph 13 of the lease provided as follows:
“ ‘Any automobile service station erected on the premises, together with all pumps, machinery, . . shall be and remain Shell’s property and Shell shall have the right to remove any or all of the same from the premises at any time during, and within sixty (60) days after any ter *300 mination of, this lease or any tenancy thereafter.
“ ‘All other buildings, structures and improvements placed upon the leased premises by Shell during the continuance of this lease, of a kind and character normally deemed in law to become a part of the realty . . . shall be and remain the property of Lessor, and upon the expiration or termination of this lease shall be delivered to Lessor, natural wear and tear and damage from fire or other casualty excepted.’
“The removal of the building would have no practical value'to Shell because the expense of removing the building from the leased premises and storing the remnants would be prohibitive and would more than offset any value attributed to the debris. Furthermore, under the law, in view of the lease provision, the building would be deemed personal property and is not recoverable as a permanent fixture. We quote from 36A C.J.S., § 15, FIXTURES, Page 631:
“ ‘Effect as rendering article personalty. The cases are ordinarily to the effect that an article which is annexed by the tenant, subject to a stipulation granting him the right of removal, retains its chattel character, as long as the right of removal continues, as between the parties, although it may lose its chattel character, if so closely annexed as to become an integral part of the land.’
“We cite the following headnote from Powers v. Harris, 68 Ala. 409: ‘A house, fence or any other erection placed upon the land of another with his permission and with the intention that it should be held as property of the builder is personal property and not a fixture.’ For the difference between a chattel and a fixture, see Southern Cotton Oil Company v. Lowery, 163 So. 629, 231 Ala. 119 (1935); also Groves v. Segars, 261 So.2d 389, 288 Ala. 376 (1972).
“Furthermore,
“ ‘The authorities in support of the holding in Wilkes are the same we would cite here and will not be repeated. The trial court erred in failing to sustain objections to the questions relating to personal property in the store building.
“ ‘. -. . There is, in this state, no constitutional provision or statute requiring compensation for damages to personal property in a condemnation of realty. Consequential damages to personal property have never been compensable in Alabama. The usual reason stated for the rule is that personalty which is not affixed to realty can be removed by the owner to another place. See Ridings [Ridings v. State, 16 Ala.App. 467, 79 So. 141], supra.' State v. Woodham [288 Ala. 608, 264 So.2d 166], supra.
“If the building becomes an integral part of the land and loses its chattel character it becomes the property of the Lessor, or if by the provision in the lease, is deemed to be personal property and not a fixture, in either event, the Lessee under the law in Alabama, is not entitled to recover damages therefor out of the award.”
I have quoted from the landowners’ brief because I think it appropriate that bench and bar know exactly what this case holds.
The property owners impliedly admit that witnesses on both sides testified that economic rent should be 10% of the fair market value of the property. They say, however, the county paid too much for the property. My question is: Did the county pay twice what the property was worth? The consent award was $400,000 and the court’s finding of fair market value for the purpose of distribution was $200,000.
Also, the landowners say the building was “personal property” and that the leaseholder, even though having a right to remove, was not entitled to a penny out of the condemnation award. Yet, the landowners got $60,000 for the value of this improvement. The landowners contend in brief that Shell’s building was not worth anything because to remove and store it would be prohibitive. Nevertheless, the landowners were awarded $60,000 for this “personalty”, which they contend belongs to Shell.
At the very least, Shell should be paid $60,000 in addition to the amount originally *301 awarded by the trial court under any theory of what would be considered a fair and just apportionment of the award.
TORBERT, C. J., concurs.